COATS, Respondent, vs. TOWN OF STANTON, Appellant.

*March 11 — April 3, 1895.*

*Injury from defective highway: Special verdict: Uncertainty in answer: Informing jury as to, effect of answer.*

1. In an action for personal injuries alleged to have been caused by a defective highway the jury were to find a general verdict and also to answer the two special questions whether the highway was reasonably safe and whether the plaintiff or her driver was guilty of any want of ordinary care which contributed to the injury. The jury returned a general verdict for the plaintiff, found that the highway was not reasonably safe, and answered the second question that "there was some want of care." Whether such answer was sufficiently certain as a finding of contributory negligence is not determined, but it is *held* that it was proper for the trial court to point out supposed uncertainties in it and to require it to be made clear and definite.

2. It was error in such case for the court to tell the jury that if they answered the second question in the affirmative their general verdict for the plaintiff could not stand.

APPEAL from a judgment of the circuit court for Dunn county: E. B. BUNDY, Circuit Judge. *Reversed.*

This action was brought by the plaintiff to recover against the defendant town the damages she alleged she had sustained in consequence of a personal injury received while traveling upon one of its highways, by reason of its insufficiency and want of repair. The complaint contained the usual allegations, and the answer was substantially a general denial.

The evidence tended to show that the road at the point where the accident happened was on a side hill, made by plowing into the hill and throwing out the dirt. The road was on the side hill for a distance of eighty or one hundred rods, and portions of it steep and part of the way sandy. It was very narrow at the point in question at the top of the hill,— only seven or eight feet wide,— but practically straight

Coats vs. Town of Stanton.

and level, and the roadbed was firm and smooth, the side hill rising on the right hand and the steep slope descending on the left; that there was some snow and ice on and along and next to the right-hand or hill side. The evidence also tended to show that the plaintiff was familiar with the road and had traveled it frequently, and that on the occasion in question she and her three children were riding in a buggy in which there was but a single seat, drawn by her father's horse, which was old and blind and had been for several years; that he had a habit when driven of carrying his head to the left and veering around in that direction and getting out of the road, but the evidence on this point was conflicting. It appeared that the plaintiff had often driven the horse. She sat on the left hand of the seat, holding her infant in her arms. Her three-year old girl was between her and her brother; and her boy, eight years old, was standing in the back part of the buggy, holding on to the seat. The brother, about twenty-three years of age, was driving, holding the reins in one hand, and they had been talking until they reached the level place described in the road, when the horse, buggy, and all who were in it went over the bank at the left of the track, falling down the hillside, and the plaintiff received the injury of which she complains, namely, a fracture of one of the bones of the arm and a dislocation of the wrist. It was not yet dark when the accident occurred, and neither the plaintiff nor her brother could state very definitely how it happened. She said: "The first we knew of it, the front wheel went over the bank, and that drew the horse back, and all. . . . I could not tell whether the horse stumbled, or had a snowball on his feet that caused him to stumble, or whether it was the buggy that slid." Her brother testified: "I was driving along, and the first thing I knew we went over the bank. It was done so suddenly that neither of us knew how the accident occurred." There was other evidence tending to show contributory negligence

on the part of the plaintiff, and also evidence to rebut such claim.

The court submitted the case to the jury to find a general verdict, and to answer therewith two questions, namely: (1) Was the highway at the point where the accident occurred in a reasonably safe condition for the passage of vehicles over it? (2) Was the plaintiff or her brother, who was driving at the time, guilty of any want of ordinary care which contributed to the plaintiff's injury? The jury retired to consider of their verdict, and the next day returned in court and reported they had not agreed upon a verdict, and the court ordered them to retire for further consideration. On the same day the jury again returned and desired a view of the place of the accident, which was ordered and had, after which the jury proceeded to further consideration of the case, and at 9 o'clock in the evening they returned with a general verdict in favor of the plaintiff for $250, answering the first question in the negative, and to the second question they answered, "There was some want of care." The court returned the verdict and questions to the jury on the ground that the second question was not properly answered, instructing them that the answer was insufficient,— first, because the jury did not say whether the plaintiff was guilty of any want of ordinary care; second, the answer did not say whether the want of care contributed to the injury; and the court instructed the jury as to the different degrees of care and of negligence, and that they should answer the question as it reads, by "Yes" or "No," and that: "Of course, if you answer 'Yes,' to the second interrogatory, the general verdict for $250 cannot stand." The jury again retired for half an hour, and afterwards returned to the court with a verdict and answers as before. The court returned the verdict and questions on the ground as before, and said: "The second interrogatory I want you to answer by 'Yes' or 'No.' You came to the

conclusion that there was some want of care. You don't
say what kind of care;" and instructed the jury again on
the different degrees of care and negligence, and said:
"Now if you say that she or her driver was guilty of any
want of ordinary care, this verdict of $250 cannot stand, nor
any other verdict in favor of the plaintiff, but if you should
say she was guilty of no want of ordinary care, then, if
the other facts exist as you have found them here,— the
insufficiency of the highway, and the injury resulting from
it,— as I told you in my charge, then she can recover. She
is not required to use extraordinary care, and your answer
don't say what kind of care there was. There might have
been a slight want of ordinary care. Now, understand, a
person passing along a highway is obliged to use no more
care than an ordinarily prudent person would exercise under
like circumstances,— such ordinarily prudent men as you
see every day; and I want to know whether the driver did
exercise that kind of care or not." A juror then asked: "If,
as a jury, we say she is guilty of slight care, that would not
debar her of the $250?" to which the court replied: "I want
you to answer that question as put to you, and do nothing
else,—'Yes' or 'No.' If you undertake to split hairs, you
will get it mixed up sure." The court ordered the jury back
to consider of their verdict, and on the same day, at 10
o'clock P. M., the jury returned in court with a general ver-
dict for the plaintiff as before, and answered both questions
in the negative. After a motion for a new trial had been
overruled, judgment was given on the verdict, from which
the defendant appealed.

The cause was submitted for the appellant on briefs by
*Whitford & Steele*, and for the respondent on the brief of
*John Kelley, Jr.*

To the point that it was the duty of the jury to make di-
rect and positive answer to the questions submitted, and re-
spondent certainly cannot be heard to say that the trial

court erred in requiring the jury to make such answer to the second question, counsel for the appellant cited *Davis v. Farmington*, 42 Wis. 425; *Carroll v. Bohan*, 43 id. 218; 2 Thomp. Trials, § 2685, and cases cited.

Counsel for the respondent contended, *inter alia*, that the general verdict and special findings as originally returned were sufficient to sustain a judgment for the plaintiff. Where the special findings can, on any reasonable hypothesis, be reconciled with the general verdict, the latter will control. *Louisville, E. & St. L. C. R. Co. v. Summers*, 131 Ind. 241; *Peninsular L. T. & M. Co. v. Franklin Ins. Co.* 35 W. Va. 666; *Evansville v. Thacker*, 2 Ind. App. 370; *Stein v. C. & G. T. R. Co.* 41 Ill. App. 38; *Shoner v. Penn. Co.* 130 Ind. 170. A special finding cannot override a general verdict, unless the record clearly shows upon its face that both cannot stand. *Block v. Haseltine*, 3 Ind. App. 491; *Schaffner v. Kober*, 2 id. 409; *Reeves' Estate v. Moore*, 4 id. 492; *Grand R. & I. R. Co. v. Cox*, 8 id. 29. The answer to the second question as first returned was equivalent to a negative answer. *Elgin, J. & E. R. Co. v. Raymond*, 148 Ill. 241; *Louisville, N. A. & C. R. Co. v. Costello*, 9 Ind. App. 462; *Fowler v. Linquist*, 37 N. E. Rep. 133. The presumption is that the jury had considered the testimony bearing on such question and found no want of ordinary care before rendering the general verdict. *Spencer v. Williams*, 160 Mass. 17; *Poseyville v. Lewis*, 126 Ind. 80. The court did not err in its charge to the jury after they had brought in their first verdict and answers to questions submitted. *Ryan v. Rockford Ins. Co.* 77 Wis. 611; *Chopin v. Badger P. Co.* 83 id. 192; *Hoppe v. C., M. & St. P. R. Co.* 61 id. 368; *Wightman v. C. & N. W. R. Co.* 73 id. 173; *Reed v. Madison*, 85 id. 667.

PINNEY, J. 1. Whether the highway was in a reasonably safe condition, and whether any want of ordinary care on

Coats vs. Town of Stanton.

the part of the plaintiff or her driver contributed to her injury, appear to have been questions which gave rise to considerable doubt and difficulty in the minds of the jury. The jury had been out some part of one day and all the following night, and reported at an early hour, it would seem, on the following day that they had not agreed, when they were sent back for further deliberation. Subsequently a view of the place of the accident was had. At 9 o'clock in the evening, after they had had the case under consideration somewhat over twenty-seven hours, they returned a general verdict for the plaintiff for $250, the answer to the second question being: "There was some want of care." With this answer written beneath the second question it is impossible to maintain that the jury had negatived the existence of contributory negligence on the part of the plaintiff, or that it indicated merely a *slight* want of care. No such qualification can be fairly implied. On the contrary, taking the question and answer together, there would seem to be a strong implication that, as the answer was designed to be responsive to the question, the want of care intended by the jury was some want of ordinary care which contributed to the plaintiff's injury, as expressed in the question. Without affirming that the answer was sufficiently certain as a finding of contributory negligence, it was proper for the court to point out the supposed uncertainties in it, and to require it to be made clear and definite.

2. It was error, we think, for the court to tell the jury that if they answered "Yes" to the second question the general verdict for $250 could not stand. After further consideration of half an hour, the jury returned the same general verdict and answers as before, and with the like result; the court informing them that if they should say that the plaintiff or her driver was guilty of any want of ordinary care, the verdict for $250, or any other, in favor of the plaintiff, could not stand, but if they should say she was

Coats vs. Town of Stanton.

guilty of no want of ordinary care, then, if the other facts existed as they had found them, she could recover. This was but a repetition of the previous error, and in terms much more emphatic and objectionable. The question of the juror whether, if they should say, as he expressed it, that the plaintiff was guilty of slight care, that would debar her of the $250, indicates that the testimony had impressed the jury that there was fault in some degree on the part of the plaintiff. The court sent the jury back for further deliberation, ordering them to answer the question "Yes" or "No," and soon thereafter they returned the general verdict, answering both questions in the negative.

It is well settled that the court had no right to tell the jury how an answer to the second question, either affirmative or negative, would affect their general verdict, or whether it would be consistent with it. The jury had no right to be informed how any particular answer to a special question would affect the case, or what judgment would follow in consequence of it, for to impart such information would almost necessarily defeat the object intended to be secured by a special verdict or answers to particular questions in connection with a general verdict. The object of the law is to secure fair and impartial answers to such questions, free from bias or prejudice in favor of either party or in favor of or against a particular result, and to guard against the danger of the result being affected or controlled by favor or sympathy, or by immaterial considerations. The jury had determined upon a general verdict, small in amount, and probably the result of mere compromise; but the effect of the information the court gave them, and a rigid insistence that the question must be answered "Yes" or "No," put the jury no doubt under a considerable degree of constraint, and induced them, after protracted and wearisome deliberations, to forego their convictions upon the question of the plaintiff's negligence as the only means of saving the

general verdict upon which they had agreed. In all cases the different questions should be so submitted as to obtain fair and impartial answers according to the evidence, and the court has no right to insist in its instructions upon the answers being consistent with the general verdict or with each other, or to point out to the jury what effect in law the answers, or either of them, will have upon a general verdict or the right of either party to a judgment in his favor. These conclusions are in accordance with the case of *Ryan v. Rockford Ins. Co.* 77 Wis. 612. In the present case the jury were not cautioned, as it was very proper they should have been, that they should not consider the effect which their answers to the special questions might have upon the judgment in the case, but the court industriously took pains to impress upon them that the verdict for $250 could not stand, or any other verdict for the plaintiff, if the second question was answered in the affirmative,— a course wholly subversive of the ends and purposes for which special verdicts and special questions in connection with general verdicts are authorized. The case of *Chopin v. Badger Paper Co.* 83 Wis. 192, is in these respects in accord with the previous decision. In *Reed v. Madison,* 85 Wis. 679, it was pointed out that the instructions in that case did not "interfere with the proper consideration and determination of each question submitted, independently of all others," and, while it holds that a general statement of the law in such cases in connection with the particular questions would not be erroneous, the case affords no support for the course pursued in the present instance, which would, we think, be injurious rather than helpful in the administration of justice.

For the errors pointed out, the judgment of the circuit court must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.