624 P.2d 383

John W. ODENWALT, Plaintiff–Appel-
lant and Cross–Respondent,

v.

Don ZARING, Defendant–Respondent
and Cross–Respondent,

and

Bannock Creek Stockmen's Association,
Defendant–Respondent, and
Cross–Appellant.

No. 13027.

Supreme Court of Idaho.

Sept. 24, 1980.
Rehearing Denied March 17, 1981.

**2**

Thomas F. Dial and Gregory C. May of Dial, Looze & May, Pocatello, for John W. Odenwalt.

William A. Parsons of Parsons & Smith, Burley, for Don Zaring.

Roger D. Cox and Dwight R. Bowen of Cox & Bowen, Idaho Falls, for Bannock Creek Stockmen's Assn.

BAKES, Justice.

Defendant Bannock Creek Stockmen's Association is composed entirely of Indian members. The association grazes both Indian and non–Indian owned livestock on the Fort Hall Indian Reservation. The non–Indian owners pay a fee for this service. In February, 1971, defendant Don Zaring entered into a contract with the association pursuant to which the association agreed to herd 200 head of Zaring's cattle on the reservation.

In October of 1971 some of the cattle wandered through inadequate fencing onto an interstate highway. There plaintiff John Odenwalt's pickup collided with one of Zaring's cattle. Odenwalt sued both Zaring and the association for damages, alleging that the defendants were negligent in allowing the struck cow to roam unattended at night on a highway situated within a fenced area and herd district.

The association initially moved to dismiss the complaint against it on the ground that the district court lacked jurisdiction over the association and over the subject matter as it related to the association. The trial court denied the motion. A jury trial was held in December, 1977. The jury found that Odenwalt had sustained damages totaling $53,800.00 and allocated negligence as follows: plaintiff Odenwalt, 25%; defendant Zaring, 10%; and defendant association, 65%. The trial court, relying on I.C. § 6–801, entered judgment on the verdict in favor of Odenwalt against the association for $40,350.00, but denied Odenwalt any judgment against Zaring. Odenwalt then moved that the judgment be amended by including Zaring as a judgment debtor. The court denied the motion, holding that Odenwalt's negligence had to be compared with each individual defendant's negligence; that Odenwalt could not recover from Zaring because Odenwalt was more negligent than Zaring. Odenwalt appeals from this judgment; the association cross–appeals from the judgment and from the denial of its motion challenging jurisdiction.

I

■ The association, in support of its appeal from the order denying its motion for summary judgment, argues that Congress has plenary power over matters arising in Indian territory and that the courts of the State of Idaho lack subject matter jurisdiction here (1) because Congress has preempted the field and (2) because assumption of jurisdiction by the state would infringe upon the Shoshone–Bannock Tribe's right of self–government. It is true that Congress has plenary power over affairs arising within Indian country, unless it has provided otherwise and unless the state has correspondingly assumed such jurisdiction. *See* 25 U.S.C. § 1322; I.C. § 67–5102; *Kennerly v. District Court of the Ninth Judicial Dist. of Montana*, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971). It is also true that Idaho has not assumed jurisdiction over tort actions arising on the reservation.[1] This

---

1. The State of Idaho has assumed civil jurisdiction over the following matters arising in Indian country: compulsory school attendance; juvenile delinquency and youth rehabilitation; dependent, neglected and abused children; insanities and mental illness; public assistance;

action, however, did not "arise on" the reservation.

"[T]ribal activities conducted outside the reservation present different considerations. . . . Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the State." *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148–49, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114 (1973) (citation omitted).

It was similarly noted in *Voorhees v. Spencer*, 89 Nev. 1, 504 P.2d 1321, 1323–24 (1973), that "[a]bsent Congressional prohibition, if the event or matter in controversy which calls for judicial action arises outside Indian country, Indians are subject to the laws of the jurisdiction involved. . . . Indians have access to the State courts, and the State may regulate their activities outside Indian country, even though they are members of a Tribe and reside on a reservation."

Thus, it was held in *State Securities, Inc. v. Anderson*, 84 N.M. 629, 506 P.2d 786, 789 (1973), that "state jurisdiction is proper in cases between Indians and non–Indians involving contractual obligations incurred off the reservation . . . ," and in *Crawford v. Roy*, 577 P.2d 392, 393 (Mont.1978), that the state has jurisdiction "over a transaction involving an Indian party when that transaction involved significant contacts with the state outside reservation boundaries." *Accord, Little Horn State Bank v. Stops*, 170 Mont. 510, 555 P.2d 211 (1976), *cert. denied* 431 U.S. 924, 97 S.Ct. 2198, 53 L.Ed.2d 238 (1977) (state has jurisdiction where loan was obtained outside the boundaries of the reservation).

■ Nonetheless, the association contends that Congress has preempted this area by enacting substantial legislation governing grazing rights upon Indian lands,

that the grazing agreement "which was apparently found to have been breached" was subject to substantial regulation by the Bureau of Indian Affairs. To support this argument, the association cites four statutes: 25 U.S.C. § 179 (driving stock to graze on Indian land without permission); 25 U.S.C. § 81 (dealing with contracts between Indians and non–Indians); 25 U.S.C. § 391 (restrictions on alienation of Indian land); and 25 U.S.C. § 397 (leasing of Indian lands). However, this is not a contract action, nor one dealing with Indian lands. Rather, this is a tort action for damages resulting from a collision with a cow which was negligently allowed to wander on the highway. Thus, the duty that was breached was not one of contract, but one to keep the cow off the highway, *see, e. g., Cunningham v. Bundy*, 100 Idaho 456, 600 P.2d 132 (1979); *Whitt v. Jarnagin*, 91 Idaho 181, 418 P.2d 278 (1966); *Corthell v. Pearson*, 88 Idaho 295, 399 P.2d 266 (1965); and, as a corollary, to see that the fences were in repair and adequate to keep the cattle off the highway. *Whitt v. Jarnagin, supra.* The association has failed to call to our attention any federal statutes dealing with tort actions such as this one, and we do not see that the federal government has preempted state jurisdiction over this action.

The association similarly contends that the contacts of the association with the citizens of Idaho were minimal and that the duty upon which liability was premised arose out of a contract arising on the reservation such that state jurisdiction would "substantially interfere with the rights of the reservation Indians to have contracts which are intended to be performed strictly on the reservation, interpreted in light of the Indian customs and familiar terminology employed by the members of the Indian reservation."[2] However, the accident from

domestic relations; and operation and management of motor vehicles upon highways and roads maintained by the county or state or political subdivision thereof. I.C. § 67–5101.

**2.** The association also apparently maintains that the tribal court of the Shoshone–Bannock

tribes has jurisdiction here because it has civil jurisdiction to hear causes of action involving contracts with its individual members, citing the Law & Order Code of the Shoshone–Bannock Tribes, Ch. 1, § 2, as amended on July 26, 1974. However, the accident occurred on October 26, 1971, three years before this amend-

which plaintiff's claim arose was more than a minimal contact with a citizen of Idaho and occurred off the reservation. The district court did not err in assuming jurisdiction over the defendant association.

## II

The second issue before us is whether the defendant Zaring, who was 10% negligent, is liable to plaintiff Odenwalt, who was 25% negligent. More broadly stated, the question is whether a plaintiff may recover from a defendant who is less negligent than the plaintiff, where the plaintiff's negligence was less than the combined negligence of the negligent defendants. Two lines of authority have emerged. Under one approach, called the "individual" or "Wisconsin" rule, the plaintiff's negligence is compared to the negligence of each individual defendant, such that a plaintiff may not recover from a defendant found to be as negligent or less negligent than himself. *Marier v. Memorial Rescue Service, Inc.*, 296 Minn. 242, 207 N.W.2d 706 (1973); *Rawson v. Lohsen*, 145 N.J.Super. 71, 366 A.2d 1022 (1976); *Stannard v. Harris*, 380 A.2d 101 (Vt.1977); *Walker v. Kroger Grocery & Baking Co.*, 214 Wis. 519, 252 N.W. 721 (1934). The second approach, termed the "unit" rule, permits the plaintiff to recover from any negligent defendant so long as the plaintiff's negligence is less than the combined negligence of all the defendants. *Walton v. Tull*, 234 Ark. 882, 356 S.W.2d 20

(1962); *Graci v. Damon*, —— Mass.App. ——, 374 N.E.2d 311 (1978), *aff'd* —— Mass. ——, 383 N.E.2d 842 (1978); *Laubach v. Morgan*, 588 P.2d 1071 (Okl.1978). Because we think it clear that when I.C. § 6–801 was enacted the Idaho legislature intended to adopt the Wisconsin or individual rule, we affirm the trial court.

Idaho's comparative negligence statute, I.C. § 6–801, reads as follows:

"6–801. COMPARATIVE NEGLIGENCE–EFFECT OF CONTRIBUTORY NEGLIGENCE.–Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence or gross negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence or gross negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."

The above statute, enacted in 1971, is virtually identical to the Wisconsin comparative negligence statute in effect in 1971.[3] Wisconsin was one of a few states which pioneered the concept of comparative negligence. 1931 Wis.Laws ch. 242. With the exception of some *dicta* found in *May v. Skelly Oil Co.*, 83 Wis.2d 30, 264 N.W.2d 574 (1978),[4] the Wisconsin Supreme Court has

ment. Moreover, Ch. 2, § 1, of the Code, as adopted in 1963, provided for civil jurisdiction for the tribal court over "all suits wherein the defendant is a member of a recognized Indian tribe, residing on the reservation and where suit is for a money recovery where the amount sued for does not exceed $500.00." Since no amendments prior to 1974 have been called to our attention, and since this action does not fall within that provision, we must assume that the tribal court would not have had jurisdiction of this action.

3. I.C. § 6–801 permits recovery if the plaintiff's comparative negligence was not as great as the "negligence or gross negligence of the person against whom recovery is sought ...." Wis. Stat. § 895.045 omits the phrase "or gross negligence." In 1971, the Wisconsin legislature changed the phrase "as great as" to "not greater than," thus permitting the defendant to re-

cover where the negligence of the plaintiff and defendant are both determined to be 50%. 1971 Wis.Laws ch. 47.

4. In *May*, a majority of the Wisconsin court announced its intention to switch to the unit rule. Two years later, the Wisconsin Supreme Court decided instead to stick with the individual rule. *Reiter v. Dyken*, 95 Wis.2d 461, 290 N.W.2d 510 (1980). In rejecting the *May dicta*, the *Reiter* majority felt that a change in the method of comparison "would be better addressed to the legislature." *Id.* 290 N.W.2d at 517. In any event, the *May* case would have had no effect on today's decision. Our task is to determine the intent of the 1971 Idaho legislature. To that end, we look to the judicial gloss placed upon the Wisconsin comparative negligence statute prior to 1971. Even had the Wisconsin Supreme Court adhered to its 1978 dictal pronouncement in *May*, our construction

consistently construed its comparative negligence statute to require individual or one–on–one comparison. *Reiter v. Dyken*, 95 Wis.2d 461, 290 N.W.2d 510 (1980); *Soczka v. Rechner*, 73 Wis.2d 157, 242 N.W.2d 910 (1976); *Mariuzza v. Kenower*, 68 Wis.2d 321, 228 N.W.2d 702 (1975); *Schwenn v. Loraine Hotel Co.*, 14 Wis.2d 601, 111 N.W.2d 495 (1961); *Walker v. Kroger Grocery & Baking Co.*, 214 Wis. 519, 252 N.W. 721 (1934). This court has consistently held that "[a] statute which is adopted from another jurisdiction will be presumed to be adopted with the prior construction placed upon it by the courts of such other jurisdiction." *Nixon v. Triber*, 100 Idaho 198, 200, 595 P.2d 1093, 1095 (1979). *State v. Miles*, 97 Idaho 396, 545 P.2d 484 (1976); *Doggett v. Electronics Corp. of America*, 93 Idaho 26, 454 P.2d 63 (1969). Therefore, in the absence of some other legislation which would clearly suggest a different result,[5] we should follow the interpretation which the Wisconsin Supreme Court had placed upon their comparative negligence statute prior to 1971.

It must be remembered that the Idaho legislature did not intend to create a system of pure comparative negligence which always apportions loss according to fault. For example, under I.C. § 6–801, if a single plaintiff and a single defendant are both found to be 50% negligent, plaintiff recovers nothing. In that situation, loss is not allocated according to fault.[6] The legislature has chosen to cut off the plaintiff's right to recover at the point at which his

negligence is equal to or greater than that of the person against whom recovery is sought. It would be incongruous to suggest that where there is one defendant and one plaintiff, and both are found to be equally negligent (50%), the plaintiff recovers nothing; but where there are two defendants and one plaintiff, and all three are found to be equally negligent (33⅓%), the plaintiff may recover 66⅔% of his damages from either defendant.

We also note that the authors of a leading treatise on comparative negligence have concluded that Idaho has chosen to follow the Wisconsin or individual rule. "The Idaho comparative negligence act does not [pit] the plaintiff against all defendants as a unit, but rather assesses the plaintiff's negligence against the individual negligence of each defendant." C. Heft & C. Heft, Comparative Negligence Manual § 1.70 at 19 (1978).

Finally, it seems clear that the unit rule proposed by the appellant frequently achieves a harsh and unjust result. The oppressive nature of the unit rule is best exemplified by the facts of this case. Were we to adopt the unit rule in Idaho, the defendant Zaring, who was only 10% at fault, would be liable for 75% of the injuries to the plaintiff Odenwalt, who was 25% negligent. If for any reason Zaring was unable to obtain contribution from the association, he would wind up paying the great majority of the damages of a plaintiff whose negligence is 2½ times greater than his own. On the other hand, in every case

of the 1971 Idaho comparative negligence statute would, and indeed must, remain the same.

5. Appellant directs our attention to I.C. § 73–114, which provides that "[u]nless otherwise defined for purposes of a specific statute . . . the singular number includes the plural and the plural the singular . . . ." Appellant argues that application of this section alters the literal language of I.C. § 6–801 as follows: that the plaintiff can have no recovery unless "his negligence was not as great as the negligence . . . of the person [or persons] against whom recovery is sought." Such a reading would, of course, tend to support the unit rule construction. However, I.C. § 73–114 is to be used only to give effect to legislative intent, not to deter-

mine it. We have recently held that "I.C. § 73–114 is not mandatory by its terms, but merely instructive that the singular may be extended or applied to the plural. It is not a rule of general application and applies only when necessary to carry out the obvious intent of the legislature." *C. Forsman Real Estate Co., Inc. v. Hatch*, 97 Idaho 511, 514, 547 P.2d 1116, 1119 (1976).

6. If loss was intended to be allocated according to fault, the defendant in the above case would be liable for 50% of plaintiff's damages. This is precisely what takes place under a pure comparative negligence system, but not under a modified system as in Idaho.

where a plaintiff is barred from recovery against a defendant under the individual or Wisconsin rule, it is because the plaintiff is as much to blame as the defendant, or more so.

█ Whatever this Court may feel about the complex field of comparative fault, we are not given free rein. We are bound by the intent of the legislature. In view of our legislature's adoption of the Wisconsin comparative negligence statute, legislative intent is readily ascertainable. We adopt the Wisconsin or individual rule.

The judgment of the trial court is affirmed in all respects. Costs to respondents. No attorney fees.

DONALDSON, C. J., and SHEPARD, J., concur.

BISTLINE, Justice, concurring and dissenting.

While I agree with Part I of the Court's opinion on jurisdiction, I cannot agree with the analysis of the legislative intent behind I.C. § 6–801 contained in Part II.

The error of the simplistic view espoused by the majority of this Court, that because § 6–801 is similar to Wis.Stat. § 895.045 it necessarily follows that the Idaho legislature intended to adopt the "individual" rather than the "unit" rule of comparison,[1] becomes apparent upon a detailed scrutiny of both (1) the status of comparative negligence in 1971 and (2) a review of the actual act which was passed by the Idaho legislature.

### I.

It is essential to point out at the outset that the legislature did not enact § 6–801 in a vacuum, leaving implementation of the comparative negligence system to judicial gloss. Section 6–801 was but the first section of H. B. 265, which was enacted as 1971 Sess.Laws ch. 186 (See Appendix "A") and thereafter codified as I.C. §§ 6–802 (special verdicts), 6–803 (contribution among tort-feasors), 6–804 (retaining joint and several liability), and 6–805–06 (release of tort-feasor). An examination of the status of comparative negligence in 1971 shows that the Idaho legislature picked and chose among a diversity of provisions to arrive at its own scheme to divide loss according to fault, and that it was not adopting the comparative negligence scheme of any single state.

By 1971, when our legislature adopted § 6–801, at least fourteen other states and territories had adopted some form of comparative negligence. See Heft and Heft, Comparative Negligence Manual, Appendix II (1978). The variations among the adopted systems was considerable, ranging from statutes providing for pure comparative negligence, e. g., C. Z. Code tit. 4, § 1357; Miss.Code Ann. § 11–7–15, to statutes providing for recovery if plaintiff's negligence was slight in comparison with defendant's, e. g., Neb.Rev.Stats. § 25–1151; S.D.Comp. Laws § 20–9–2, to both 49% modified systems, e. g., Ark.Stats. § 27–1730.1; Wis. Stat. § 895.045, and 50% systems, e. g., N.H.Rev.Stats.Ann. § 507:7–a; Vt.Stats. Ann. Tit. 12 § 1036, to individual unique statutes. E. g., Ga.Code Ann. § 105–603 (plaintiff not entitled to recover if by ordinary care he could have avoided the consequences to himself, otherwise can recover even though he may have contributed to injury); S.C. Code § 15–1–300 (comparative negligence applicable to motor vehicle accidents only).

Not only was there a variety among the types of comparative negligence adopted,

---

1. Although it has generally been said that when the legislature adopts a statute from another state, that statute comes with the judicial construction placed upon it by that other state, such is not an absolute rule of law. *Johnson v. Casper*, 75 Idaho 256, 270 P.2d 1012 (1954); *Simons v. Davenport*, 66 Idaho 400, 160 P.2d 464 (1945); *State v. Taylor*, 59 Idaho 724, 87 P.2d 454 (1939). Here it is not at all certain that the legislature intended to adopt the Wisconsin scheme in the first instance, and we need not be diverted into arguing whether our legislature was perhaps informed on the opinions of the Wisconsin Supreme Court. We ought not be too assured that the opinions of courts in other states are a source of reading for our legislature.

but there was also an equal variety of companion rules. For instance, some states had adopted the Uniform Contribution Among Tortfeasors Act, e. g., Ark.Stat. § 34–1001 et seq.; Haw.Rev.Stat. § 663–11 et seq., some had judicially provided for contribution, e. g., *Bielski v. Schulze*, 16 Wis.2d 1, 114 N.W.2d 105 (1962), while still others simply did not allow contribution. *See, e. g., Royal Indemnity Co. v. Aetna Casualty and Surety Co.*, 193 Neb. 752, 229 N.W.2d 183 (1975) (changing former rule of no contribution). Similarly, some statutes provided that the jury was to be informed of the effect of this verdict where appropriate, e. g., Haw.Rev.Stat. § 663–31, while others did not. *See, e. g., Coats v. Town of Stanton*, 90 Wis. 130, 62 N.W. 619 (1895). *See generally Seppi v. Betty*, 99 Idaho 186, 579 P.2d 683 (1978).

Finally, statutory provisions for special verdicts differed from state to state. Compare, e. g., Haw.Rev.Stat. § 663–31 (mandatory special verdict on amount of damages and degrees of negligence) with Me.Rev. Stat.Ann.Tit. 14 § 156 (jury to reduce total damages rather than find percentages, but defendants can request findings of percentages for contribution).

In the face of this diversity of provisions to choose from, the Idaho legislature adopted what is presently codified as I.C. §§ 6–801 to 806, providing for comparative negligence, special verdicts and contribution among tortfeasors. Not only was the legislature adopting a system of comparative negligence, but it was also adopting a general scheme of loss allocation and providing how that system would operate, rather than leaving those issues for later judicial interpretation.

Wisconsin in 1971, although it had a statute almost identical to § 6–801, did not have provisions comparable to 6–802 thru 6–806. Although Wisconsin had *judicially* provided for contribution among tortfeasors in 1962 in *Bielski v. Schulze*, 16 Wis.2d 1, 114 N.W.2d 105 (1962), it had not adopted the Uniform Contribution Among Tortfeasors Act. Moreover, the Wisconsin special verdict statute in 1971, Wis.Stats. § 270.27,[2] bears little similarity to the Idaho statute.[3] The Idaho legislature in 1971 adopted an entire scheme to allocate loss where a plaintiff is less than 50% negligent; while it may have copied language from Wisconsin to enact the modified comparative negligence system, it did not choose to enact the entire Wisconsin scheme. Thus it is improper to pluck out Wisconsin case law and apply it to but one section of this comparative fault scheme without considering the entire scheme adopted by the legislature.

This conclusion is readily seen to be buttressed by the fact that I.C. §§ 6–801 to 806 bear more resemblance to the 1971 statutes of at least three other states, those of Hawaii,[4] Massachusetts[5] and Minnesota,[6] than

2. Wis.Stat. § 270.27 was as follows:

"Special Verdict. The court may, and when requested by either party, before the introduction of any testimony in his behalf, shall direct the jury to find a special verdict. Such verdict shall be prepared by the court in the form of written questions, relating only to material issues of fact and admitting a direct answer, to which the jury shall make answer in writing. It shall be discretionary with the court whether to submit such questions in terms of issues of ultimate fact, or to submit separate questions with respect to the component issues which comprise such issues of ultimate fact. In cases founded upon negligence, the court may submit separate questions as to the negligence of each party, and whether such negligence was a cause without submitting separately any particular respect in which the party was allegedly negligent. The court may also direct the jury, if they render a general verdict, to find upon particular questions of fact."

3. I.C. § 6–802 is as follows:

"Verdict giving percentage of negligence attributable to each party.–The Court may, and when requested by any party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence attributable to the person recovering."

4. 1969 Haw.Sess. Laws Act 227 is as follows:

"Section 663. Contributory negligence no bar; comparative negligence; findings of fact and special verdicts. "(a) Contributory negligence shall not bar recovery in any action by any person or his legal representative to re-

5. See note 5 on page 8.

6. See note 6 on page 8.

it does to the Wisconsin statute.[7] Both Hawaii and Massachusetts had adopted the Uniform Contribution Among Tortfeasor's Act, with the language used in the Hawaii

Note 4—Continued

cover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.

"(b) In any action to which subsection (a) of this section applies, the court, in a nonjury trial, shall make findings of fact or, in a jury trial, the jury shall return a special verdict which shall state:

"(1) The amount of the damages which would have been recoverable if there had been no contributory negligence; and

"(2) The degree of negligence of each party, expressed as a percentage.

"(c) Upon the making of the finding of fact or the return of a special verdict, as is contemplated by subsection (b) above, the court shall reduce the amount of the verdict in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made, provided, however, that if the said proportion is equal to or greater than the negligence of the person against whom recovery is sought, then, in such event, the court will enter a judgment for the defendant."

In 1976, Hawaii amended its statute to specifically adopt the unit rule. 1976 Haw.Sess. Laws Act 161 § 1.

5. The Massachusetts statutory provisions, 1969 Mass.Acts ch. 761, were almost identical to those of Hawaii, set out in the preceding footnote. In 1973, Massachusetts amended its statute to specifically adopt the unit rule. 1973 Mass.Acts ch. 1123 § 1. Prior to the effective date of this statute, the Massachusetts courts inferred that the legislature had intended to adopt the unit rule. *Graci v. Damon*, —— Mass. App. ——, 374 N.E.2d 311, aff'd —— Mass. ——, 383 N.E.2d 842 (1978). The court explained its reasoning as follows:

"In view of the *Walton* case and the split in the Wisconsin court, we cannot assume ... that the Massachusetts Legislature intended to import the entire Wisconsin case law relating to the Wisconsin statute. Indeed it is clear that the Massachusetts Legislature did not accept the closely related rule in Wisconsin requiring contribution by joint tortfeasors in proportion to the degree of their negligence.

.     .     .     .     .

"Any assumption that our Legislature intended to adopt the Wisconsin rule is further vitiated by the 1973 statute" [which specifically adopted the unit rule]. 374 N.E.2d at 317.

6. The Minnesota provision, 1969 Minn.Laws ch. 624 § 1, in pertinent part provided as follows:

"Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering. The court may, and when requested by either party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence attributable to the person recovering. When there are two or more persons who are jointly liable, contributions to awards shall be in proportion to the percentage of negligence attributable to each, provided, however, that each shall remain jointly and severally liable for the whole award."

The Minnesota court in *Marier v. Memorial Rescue Service, Inc.*, 296 Minn. 242, 207 N.W.2d 706 (1973), held that the Minnesota legislature had intended to adopt the individual rule from Wisconsin. Decided in 1973, however, that case has no bearing on what our legislature intended in 1971.

7. Furthermore, in *Seppi v. Betty*, 99 Idaho 186, 579 P.2d 683 (1978), this Court, after stating that the question presented "when applied to the particular version of comparative negligence in this state presents a unique set of issues," held that in most cases the trial court should inform the jury of the effect of apportioning 50% or more of the negligence to the plaintiff. In so holding, the Court discussed the fact that the Wisconsin courts prohibit such an instruction, but the Court did not mention the possibility that our scheme of comparative negligence might have been taken from Wisconsin. Since decisions of the state from which the statute is modeled are to be looked to for "persuasive guidance," *Intermountain Business Forms, Inc. v. Shepard Business Forms Co.*, 96 Idaho 538, 541, 531 P.2d 1183, 1186 (1975), it is perplexing that this Court in *Seppi* did not discuss the possibility that Idaho had adopted the Wisconsin scheme, especially since other comparative negligence statutes in 1971 did specifically provide that the jury was to be so informed. The only answer has to be that when *Seppi* was decided in 1975 this Court felt that our legislature had not adopted Wisconsin's entire scheme of loss allocation with all its judicial gloss, but rather had only at most borrowed some language to establish a modi-

Act being substantially similar to that used in Idaho, while Minnesota provided simply that contribution should be in proportion to negligence. Both Hawaii and Massachusetts had special verdict statutes far more similar to that adopted in Idaho than was Wisconsin's, and the Minnesota special verdict provision was identical to that adopted in Idaho.[8] Finally, all three states had provisions almost identical to our I.C. § 6–801.

Based on the foregoing, it is apparent that the bald assumption that the Idaho legislature intended to incorporate the entire Wisconsin scheme with all of its judicial gloss is erroneous. While it is true that the Wisconsin provision may have served as a prototype for other states, it does not follow that, because Wisconsin was the first in time, use of similar language in our Idaho statute signifies a legislative intent to adopt Wisconsin law. It is just as likely that the Idaho legislature simply copied the language of the prototype in the process of enacting its own modified *system*. When the legislature convened in 1971, it had a myriad of divergent provisions to which it could look for guidance, including several almost identical to that which was enacted in I.C. § 6–801. It did not have any, however, which specifically adopted the unit rule.[9] The legislature picked and chose among these provisions, selecting its own particular scheme of comparative negligence and loss allocation. The task of this Court now is *to review the entire Act then adopted*, and from that scenario ascertain whether the legislature intended to adopt the individual (Wisconsin) or the unit (aggregate) rule.[10] *See, e. g., Bush v. Oliver*, 86 Idaho 380, 386 P.2d 967 (1963); *State v. Groseclose*, 67 Idaho 71, 171 P.2d 863 (1946). To accomplish this, the intent

of the legislature "is to be 'collected from the context, from the occasion and necessity of the law, from the mischief felt, and the remedy in view; and the intention is to be taken or presumed according to what is consonant with reason and good discretion.'" *Noble v. Glenns Ferry Bank, Ltd.*, 91 Idaho 364, 367, 421 P.2d 444, 447 (1966), quoting *Offield v. Davis*, 100 Va. 250, 40 S.E. 910, 912 (1902).

## II.

I.C. § 73–114, which was enacted long before § 6–801 and which applies to the compiled laws of Idaho, states that "[u]nless otherwise defined for purposes of a specific statute . . . the singular number includes the plural and the plural the singular . . . ." However, since this Court has held that this section "is not mandatory by its terms, but merely instructive," *C. Forsman Real Estate Co. v. Hatch*, 97 Idaho 511, 514, 547 P.2d 1116, 1119 (1976), it becomes necessary to determine whether the legislature's use of "person" in I.C. § 6–801 is to be read and construed as "person" or "person or persons."

Applicable here are two pertinent rules of statutory construction. The first is well stated in *Lawless v. Davis*, 98 Idaho 175, 177, 560 P.2d 497, 499 (1977):

"It is an elementary principle of statutory construction that the consequences of a proposed interpretation of a statute can be considered when the statute is capable of more than one construction. When choosing between alternative constructions, courts should presume that a statute was not enacted to work a hardship or to effect an oppressive result. Constructions that would render the statute

---

fied system as opposed to the other systems in existence in 1971.

**8.** Compare notes 4, 5 and 6 with note 3, *supra*.

**9.** *See* Heft & Heft, Comparative Negligence Manual, Appendix II (1978). However, every state legislature that has specifically passed on the question since 1971 has adopted the unit rule. *See id.*

**10.** The statement by the majority that "the authors of a leading treatise . . . have concluded that Idaho has chosen to follow the . . . individual rule" has no bearing whatsoever on this case. The question of legislative intent is to be decided by this Court, not by the author of a treatise, especially when those authors simply make the bald assertion without any substantiating reasoning.

productive of unnecessarily harsh consequences are to be avoided. Accordingly, any ambiguity in a statute should be resolved in favor of a reasonable operation of the law."

Secondly, it is a "universal rule of statutory construction that a statute must be construed in light of its intent and purpose," *DeRousse v. Higginson*, 95 Idaho 173, 176, 505 P.2d 321, 324 (1973), quoting *Jorstad v. City of Lewiston*, 93 Idaho 122, 125, 456 P.2d 766, 769 (1969); when a statute merely comprises a section of an act, the court must look to the intent and purpose *of the entire act. See, e. g., Bush v. Oliver*, 86 Idaho 380, 386 P.2d 967 (1963); *State v. Groseclose*, 67 Idaho 71, 171 P.2d 863 (1946). The unit rule better implements the purpose of the legislature and it also best avoids hardship and oppressive results.

### A.

First, the obvious intent of the legislature in enacting the 1971 Act was to provide for a system of loss allocation, to apportion liability at least to some degree according to fault. The legislature chose to both alleviate the harshness of contributory negligence and to provide for contribution among tortfeasors according to fault.

Excluding from consideration the possible judgment–proof defendant, under a system of pure comparative negligence (where the plaintiff can recover, less his percentage of negligence, regardless of his degree of fault), the loss is allocated according to fault among all of the parties regardless of their respective degrees of negligence. The Idaho legislature deliberately did not choose to adopt the pure form of comparative negligence, instead choosing to allow the plaintiff to recover only when he is less than 50% responsible for his damages. The reasoning behind this rationale was explained in *Seppi v. Betty*, 99 Idaho 186, 195, 579 P.2d 683, 692 (1978), as follows:

"Moreover, we note that Idaho's comparative negligence law is premised on

the proposition that a plaintiff whose damages are as much the result of its own negligence as that of the defendant ought not to recover, but the parties should bear their own losses. The rule is based on a sound commonsense proposition . . . ."

In those cases where the plaintiff is less than 50% negligent, it simply cannot be said that the plaintiff's "damages are as much the result of its own negligence as that of the defendant[s]." The statement by the majority of this Court that it would be incongruous to deny recovery where both parties are 50% negligent but to allow recovery where all three are 33⅓% negligent, fails to consider that in the latter situation *two* defendants have combined with the plaintiff to produce the damages, while in the former there are but *two* parties altogether who are equally responsible. The purpose of denying a plaintiff recovery when he was 50% or more responsible was not to make his recovery dependent upon the number of defendants involved; it was to deny him recovery where he was *equally responsible* for the damages. Where he is less than 50% negligent, he cannot be equally responsible for his losses, and the legislative intent that the loss be allocated according to fault among those responsible should be upheld.[11]

Furthermore, it is inconsistent for this Court to hold that the legislature intended for tortfeasors to get contribution from one another, *regardless* of their relative degrees of fault, while a plaintiff can recover only from those defendants more negligent than he. On what basis should a 70% tortfeasor be able to get contribution from a 30% tortfeasor while a 33⅓% plaintiff can get nothing from two 33⅓% defendants? No answer suggests itself. A more consistent reading of §§ 6–801 to 806 would be that loss is to be allocated according to fault whenever the plaintiff is less at fault than all of the other defendants combined as a unit. Thus, for the legislative scheme to be internally consistent, we must follow the

---

11. Although each defendant is liable for all of plaintiff's damages, *Tucker v. Union Oil Co.*, 100 Idaho 590, 603 P.2d 156 (1979), in turn each defendant can get contribution under I.C. § 6–803 to fairly allocate the loss according to fault.

specific instructions of I.C. § 73–114 and interpret "person" as encompassing both the singular and the plural, *i. e.*, to include "person" and "persons."

### B.

Not only is the unit rule more consistent with the overall legislative intent behind §§ 6–801 to 806, but it also produces results which are more fair and equitable.

Criticisms of the individual rule include the following: (1) that it makes a plaintiff's chances of recovery inversely proportional to the number of defendants, *see e. g.*, Comparative Negligence in Vermont: A Solution or A Problem, 40 Alb.L.Rev. 777, 780 (1976), especially in light of a jury's propensity to divide the negligence equally in those cases where it is difficult to find the exact proportions, *Seppi v. Betty*, 99 Idaho 186, 579 P.2d 683 (1978); (2) that it can lead to situations where those defendants whose total percentage of negligence is greater than that of plaintiff are made to bear a share of the loss disproportionate to their degree of fault;[12] and, of course, as stated by Justice Wilkie in his concurrence in *Gross v. Denow*, 61 Wis.2d 40, 212 N.W.2d 2, 9 (1973), (3) "[t]he unfairness of this approach grows from the fact that one or more defendants may have contributed to his injuries, yet he can recover only in those situations where he can demonstrate that his negligence is either less than or as great but not greater than the negligence of one or more defendants considered separately."

In fact, in spite of the majority conclusion to the contrary, the weight of opinion is that the individual rule (Wisconsin) produces more unfairness than the unit rule. *See, e. g., Walton v. Tull*, 234 Ark. 882, 356 S.W.2d 20 (1962); *Laubach v. Morgan*, 588 P.2d 1071 (Okl.1978); *May v. Skelly Oil Co.*, 83 Wis.2d 30, 264 N.W.2d 574 (1978); V.

Schwartz, Comparative Negligence § 16.6 (1974); Prosser, Comparative Negligence, 51 Mich.L.Rev. 465, 507 (1953). The injustice that can result from the individual rule was best illustrated in *Marier v. Memorial Rescue Service, Inc.*, 296 Minn. 242, 207 N.W.2d 706 (1973). In that case, the defendant driver of a highway department truck directed the defendant driver of an ambulance to turn left. The ambulance driver did so and collided with the plaintiff. The jury found that all three parties were 33⅓% negligent, and the court held that plaintiff had no right to recover anything. There, although the two defendants combined for 67% of the negligence, the happenstance that there were two defendants instead of one denied plaintiff any recovery whatever.

Any number of examples of the injustice of the individual rule can be conceived. For example: a jaywalking pedestrian is hit by a speeding motorist whose failure to stop is due to the negligence of the car's owner in failing to warn that the brakes are faulty. The jury finds all three parties negligent, assessing percentages at 33⅓% each. Under the individual rule, the plaintiff will be denied all recovery, although the plaintiff would recover 67% of his damages had the motorist owned the car. This is patently unfair to the plaintiff. Or consider the case where plaintiff is 20% negligent and four defendants are also 20% negligent—under the individual rule, plaintiff is denied all recovery.

The *only* unfairness resulting from the unit (aggregate) rule, on the other hand, occurs in the odd circumstances when there is a judgment–proof uninsured defendant. In that case, as pointed out by the majority, a defendant less negligent than the plaintiff may have to pay a disproportionate share of the damages.[13] I submit that the

---

12. For instance, suppose a finding of negligence as follows: plaintiff 32%, defendant A 31%, defendant B 37%. Under the individual rule, with joint and several liability, B is liable to plaintiff for 68% of plaintiff's damages, but B has no right of contribution from A.

13. The problem here is not with the unit rule itself, but with the effect of joint and several liability, which till this time has not been legislatively altered or amended.

I believe the best solution was that adopted legislatively in Oregon and Texas. Or.Rev.Stat. § 18.485; Tex.Rev.Civ.Stat.Ann. Art. 2212a (Vernon). Under those statutes, while a de-

specter of a judgment–proof defendant is not sufficiently serious to outweigh the obvious injustices of the individual rule, and a wholly insufficient reason for the Court's thwarting of legislative intent. As stated in *Laubach v. Morgan*, 588 P.2d 1071, 1075 (Okl.1978), in reference to the abolition of joint and several liability,

"It is argued this could work a hardship on a plaintiff if one co–defendant is insolvent. But the specter of the judgment–proof wrongdoer is always with us, whether there is one defendant or many. We decline to turn a policy decision on an apparition. There is no solution that would not work an inequity on either the plaintiff or a defendant in some conceivable situation where one wrongdoer is insolvent."

In the absence of a specific statement of purpose to the contrary, we should not presume that the legislature made a policy judgment on the basis of an apparition. Rather, if we are to engage in assumptions, our assumption better would be that the legislature intended to adopt the rule which produces the least unfairness. That is the unit rule. The Idaho legislature chose to and did adopt a system of modified comparative negligence, thus distributing loss according to fault, whenever the plaintiff was less than 50% negligent.

I would reverse.

McFADDEN, J., concurs.

## APPENDIX A

### CHAPTER 186

(H.B.No.265)

AN ACT

PROVIDING THAT CONTRIBUTORY NEGLIGENCE SHALL NOT BAR RECOVERING OF DAMAGES FOR NEGLIGENCE OR GROSS NEGLIGENCE RESULTING IN DEATH OR INJURY TO PERSON OR PROPERTY BUT PROVIDING THAT ANY DAMAGES ALLOWED BE DIMINISHED IN PROPORTION TO THE AMOUNT OF NEGLIGENCE OR GROSS NEGLIGENCE ATTRIBUTABLE TO THE PERSON RECOVERING; PROVIDING FOR CONTRIBUTION AMONG JOINT TORTFEASORS, SETTLEMENTS BY JOINT TORTFEASORS, MEASURING CONTRIBUTION OF JOINT TORTFEASORS, AND DEFINING JOINT TORTFEASOR; PROVIDING THAT NOTHING IN THIS ACT AFFECTS COMMON LAW LIABILITY OF THE JOINT TORTFEASORS AND THAT RECOVERY AGAINST ONE JOINT TORTFEASOR DOES NOT DISCHARGE THE OTHER JOINT TORTFEASORS; PROVIDING THAT A RELEASE OF ONE JOINT TORTFEASOR REDUCES THE CLAIM AGAINST OTHER JOINT TORTFEASORS BY THE AMOUNT PAID FOR THE RELEASE OR THE PROPORTION OF THE CLAIM RELEASED IF SUCH AMOUNT OR PROPORTION IS GREATER THAN THE CONSIDERATION PAID; AND PROVIDING THAT A RELEASE BY THE INJURED PERSON ON ONE JOINT TORTFEASOR DOES NOT RELIEVE HIM FROM LIABILITY TO MAKE CONTRIBUTION TO ANOTHER JOINT TORTFEASOR EXCEPT UNDER CERTAIN CIRCUMSTANCES AND PROVIDING THAT THIS SHALL NOT APPLY IF THE ISSUE OF PROPORTIONATE FAULT IS NOT LITIGATED BETWEEN JOINT TORTFEASORS IN THE SAME SUIT.

Be It Enacted by the Legislature of the State of Idaho:

SECTION 1. Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover

---

fendant less negligent than the plaintiff is still liable to the plaintiff, he is liable only for the percentage of damages equal to the percentage of his fault. Since the less negligent defendant is responsible only for his percentage of fault and can never be held responsible for all the damages, the potential unfairness of the unit rule is avoided. Although arguably this result could be reached judicially by a re–examination of the common law theory of joint and several liability, this is a matter best left for the legislature.

damages for negligence or gross negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence or gross negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering.

SECTION 2. The court may, and when requested by any party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence attributable to the person recovering.

SECTION 3. (1) The right of contribution exists among joint tortfeasors, but a joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof.

(2) A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement.

(3) When there is such a disproportion of fault among joint tortfeasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares solely for the purpose of determining their rights of contribution among themselves, each remaining severally liable to the injured person for the whole injury as at common law.

(4) As used herein, "joint tortfeasor" means one (1) of two (2) or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.

SECTION 4. Nothing in this act affects:

(1) The common law liability of the several joint tortfeasors to have judgment recovered and payment made from them individually by the injured person for the whole injury. However, the recovery of a judgment by the injured person against one (1) joint tortfeasor does not discharge the other joint tortfeasors.

(2) Any right of indemnity under existing law.

SECTION 5. A release by the injured person of one (1) joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if such amount or proportion is greater than the consideration paid.

SECTION 6. A release by the injured person of one (1) joint tortfeasor does not relieve him from liability to make contribution to another joint tortfeasor unless the release is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata share of the released tortfeasor, of the injured person's damages recoverable against all the other tortfeasors. This section shall apply only if the issue of proportionate fault is litigated between joint tortfeasors in the same action.

Approved March 24, 1971.