728 P.2d 1306

Donald H. LELIEFELD and Jewel H. Leliefeld, husband and wife, Nabisco, Inc., a corporation, Plaintiffs-Respondents,

v.

PANORAMA CONTRACTORS, INC., Johnnie L. Carnline, Defendants-Appellants.

No. 15349.

Supreme Court of Idaho.

Jan. 16, 1986.

On Rehearing Sept. 24, 1986.

Second Rehearing Denied Oct. 31, 1986.

John W. Barrett and Kirk R. Helvie of the firm Moffat, Thomas, Barrett & Blan-

ton, Chartered, Boise, for appellants. Both argued.

Nicholas M. LaManna, Priest River, and J. Donald Curran argued, Spokane, for respondents.

BISTLINE, Justice.

The facts which give rise to this controversy are well stated in the opinion on the first appeal, *Leliefeld v. Johnson*, 104 Idaho 357, 360–61, 659 P.2d 111, 114–15 (1983) (*Leliefeld I*):

> On April 9, 1975, a traffic accident occurred on the Lightning Creek Bridge on Idaho State Highway 200 near Clark Fork, Idaho. While plaintiff-respondent Donald Leliefeld was driving east in his employer's truck, defendant-cross-appellant Johnnie Carnline was driving west in his employer's dump truck pulling a lowboy trailer loaded with a D–6 Caterpillar bulldozer. The minimum width of Carnline's load was 9'2" and the bulldozer blade extended beyond the right-hand edge of the trailer. At the time of the accident, I.C. § 49–913 provided that no vehicle using the Idaho highways could exceed eight feet in width without a permit from the state. Carnline had no permit.
>
> A collision occurred on the bridge between the truck driven by Leliefeld and the bulldozer on Carnline's trailer. While the approach roadways were 22' wide, the bridge, which was built in 1937, was 20' wide from curb to curb. On neither the approaches nor the bridge were there warning signs concerning bridge width. There was conflicting testimony as to which truck first entered the bridge. While crossing the bridge, the bulldozer blade caught on a bridge girder which caused the bulldozer to be displaced into the path of Leliefeld's oncoming truck. During the ensuing collision, Leliefeld was injured. Some time subsequent to the accident, warning signs were erected at this bridge.
>
> The Leliefelds and his [Donald's] employer Nabisco brought suit against

Carnline, and his employer Wendell Johnson, d/b/a Panorama Contractors, Inc., a/k/a/ Panoramic Construction, and the State of Idaho seeking to recover damages. The State answered and filed a cross-complaint against the other defendants Wendell Johnson, Panorama, and Carnline for damages to the bridge and for indemnity and contribution in the event the State was shown to be liable. In turn Carnline, Johnson, and Panorama filed a responsive pleading which counterclaimed against the Leliefelds and Nabisco for property damage and personal injuries to Carnline and cross-claimed against the State for damages and indemnity. Attorney fees were sought by all parties.

At the ensuing trial, the jury apportioned 10 percent of the negligence to Leliefeld, 65 percent to Carnline, and 25 percent to the state. The jury found damages as follows: Donald Leliefeld—$400,000, Jewel Leliefeld—$20,000, and Nabisco—$13,946.82 (property damages). Judgments were awarded as set out by the majority's opinion at 104 Idaho at 362, 659 P.2d at 116.

The defendants appealed the judgments against them. The defendants were essentially two in number: (1) Johnnie Carnline, driver of the Panoramic vehicle; Wendell Johnson, his employer, who did business as Panorama Contractors, Inc., a/k/a Panoramic Construction; Panoramic Construction itself, and (2) the State of Idaho. This Court's opinion found no validity in the challenges of error raised by Carnline and Johnson. Error was found in the admission of certain evidence challenged by the state of Idaho, and that defendant was held to be entitled to a new trial in which the jury would determine anew its percentage of causal fault. This would necessarily involve a redetermination of the causal fault of plaintiff Donald Leliefeld and that of the defendant Carnline-Johnson. Such is an attribute of comparative negligence actions where there are more than two

parties whose degrees of fault are at issue. Carnline-Johnson, unable to persuade the Court of any error on their appeal, nonetheless were beneficiaries of the reversal as to the state's liability which the state obtained.

The jury's adjudication of monetary damages suffered by the plaintiffs was specifically affirmed:

> The quantum of damages awarded by the jury is adequately supported by the record. Because we find no reversible error with respect to the determination of damages and we consider the damages severable from the liability issue, we affirm that determination. *Id.* at 375, 659 P.2d at 129 (citations omitted).

At the second trial, following a settlement made between the defendant State of Idaho and the plaintiffs, no evidence was presented to the jury upon which it could have found any causative negligence attributable to the state. Accordingly, the special verdict given to the jury asked the jury to apportion negligence only as to plaintiffs and as to the defendants Carnline-Johnson. Plaintiff Donald Leliefeld's negligence was set at five percent and Carnline-Johnson's at 95 percent. The jury apportioned no causal fault to the State of Idaho. The court applied these percentages to the damages determined at the first trial, and affirmed by this Court, and properly credited the defendants for the amount which plaintiffs had received from the State of Idaho.

■ The plaintiffs requested interest on their judgment award commencing from the date of the original judgment, September 6, 1978, to the date judgment was entered on retrial, October 19, 1983. The district court, in allowing interest, observed that the damages fixed by the jury were affirmed by the Supreme Court.[1]

The only way the Defendant could avoid payment of a percentage of the Judg-

ment was to prevail completely on the retrial proving Plaintiff's negligence was as great as the negligence of Carnline and Johnson. Otherwise, the Defendants could be certain of a monetary Judgment easily capable of computation based upon the fixed maximum amount affirmed in *Leliefeld I.*

Since the amount of the judgment in *Leliefeld I* was not reversed, nor modified in any regard by the Supreme Court, interest is due on said sum from the date of the original Judgment.

In *Mitchell vs Flandro 96 Ida 236* [526 P.2d 841], although the Supreme Court reversed the case in part and remanded the same to the trial Court, [it] nevertheless held that:

> "*Costs* of the original judgment *were not reversed* or modified on appeal and therefore they bear interest *from the date of the original judgment.*" [*Id.* at 238, 526 P.2d at 843.]

Such an award of interest may seem unfair to the Defendants, however, it must be kept in mind that imposing interest on a Judgment is traditionally viewed as compensation for the improper retention by the debtor of the creditor's funds, after Judgment, and pending an appeal. R., pp. 65–66.

In *Odenwalt v. Zaring,* 102 Idaho 1, 624 P.2d 383 (1980), this Court was called upon to decide whether it would there apply the "individual" or "Wisconsin" rule, or the "unit" rule. *Id.* at 4, 624 P.2d at 386. Our comparative negligence statute, I.C. § 6–801, was enacted in 1971. The Court opted for the "Wisconsin" rule on the basis that the Idaho statute, "enacted in 1971, is virtually identical to the Wisconsin comparative negligence statute in effect in 1971." *Id.* Thus, the Court held "it clear that when I.C. § 6–801 was enacted the Idaho legislature intended to adopt the Wisconsin

---

**1.** On plaintiffs petition for rehearing in *Leliefeld I,* which was denied, this Court modified its first opinion by remanding for a new trial on liability only. None of the defendants chose to peti-

tion for rehearing to challenge the change in our decision whereby we affirmed the damages as established by the jury.

or individual rule...." *Id.* The Court did so on the reasoning that "the Wisconsin Supreme Court has consistently construed its comparative negligence statute to require individual or one-on-one comparison." *Id.* at 4–5, 624 P.2d at 386–87. The Court cited two pre-1971 Wisconsin cases, *Schwenn v. Loraine Hotel Co.*, 14 Wis.2d 601, 111 N.W.2d 495 (1961) and *Walker v. Kroger Grocery & Baking Co.*, 214 Wis. 519, 252 N.W. 721 (1934), and other later Wisconsin cases as well. That citation of cases was followed with a reiteration of a time-honored principle to which this Court has faithfully adhered:

> This Court has consistently held that a statute which is adopted from another jurisdiction will be presumed to be adopted with the prior construction placed upon it by the courts of such other jurisdiction. *Nixon v. Triber*, 100 Idaho 198, 200, 595 P.2d 1093, 1095 (1979); *State v. Miles*, 97 Idaho 396, 545 P.2d 484 (1976); *Doggett v. Electronics Corp. of America*, 93 Idaho 26, 454 P.2d 63 (1969). *Odenwalt, supra*, 102 Idaho at 5, 624 P.2d at 387.

*Leliefeld I* also supports this proposition. In Part II thereof, the issue at stake was the effect of a 1971 statutory enactment dealing with design immunity. This Court, after observing "the striking similarity of language between the Idaho and California statutes," stated: "we conclude that our legislature chose to enact a version more like the California statute." *Leliefeld I, supra*, 104 Idaho at 368, 659 P.2d at 120. This Court, after observing that prior to 1971 (the date of the Idaho legislation in question) the Supreme Court of California, in two 1967 cases, *Becker v. Johnston*, 67 Cal.2d 163, 60 Cal.Rptr. 485, 430 P.2d 43 (1967), and *Cabell v. State*, 67 Cal.2d 150, 60 Cal.Rptr. 476, 430 P.2d 34 (1967), construed the California design immunity statute as granting perpetual immunity to the State of California, this Court, consistent with *Odenwalt*, likewise construed the 1971 Idaho statute to cloak the state with perpetual immunity. Of great importance

is that this Court reached this conclusion notwithstanding the fact that those two California cases had been overruled prior to the collision between Leliefeld's truck and Carnline's bulldozer on the Lightning Creek Bridge, prior to the trial, and long prior to the appeal.

The Court's conclusion was in adherence to that which Justice Bakes wrote for the Court in *Odenwalt.* After mentioning the Wisconsin Supreme Court's dicta in *May v. Skelly Oil Co.*, 83 Wis.2d 30, 264 N.W.2d 574 (1978), Justice Bakes delineated the extent of the Court's unwaivering adherence to the rule that the legislature in adopting the statute of another state also adopts those constructions of those statutes by that state's supreme court which were prior to Idaho's enactment:

> In *May*, a majority of the Wisconsin court announced its intention to switch to the unit rule. Two years later, the Wisconsin Supreme Court decided instead to stick with the individual rule. *Reiter v. Dyken*, 95 Wis.2d 461, 290 N.W.2d 510 (1980). In rejecting the *May* dicta, the *Reiter* majority felt that a change in the method of comparison "would be better addressed to the legislature." *Id.* 290 N.W.2d at 517. *In any event, the May case would have no effect on todays decision. Our task is to determine the intent of the 1971 Idaho legislature. To that end, we look to the judicial gloss placed upon the Wisconsin comparative negligence statute prior to 1971. Even had the Wisconsin Supreme Court adhered to its 1978 dictal pronouncement in May, our construction of the 1971 Idaho comparative negligence statute would, and indeed must, remain the same.* *Odenwalt, supra*, 102 Idaho at 4–5, n. 4, 624 P.2d at 386–87, n. 4 (emphasis added).

Accordingly, where Idaho has adopted the Wisconsin version of comparative negligence, we turn to the case law of that state, as it was prior to 1971, to ascertain if and how, in a comparative negligence case,

that state's high court has applied a second trial's reassessment of the apportionment of liability to a prior affirmed adjudication of a plaintiff's total damages. There were at least four pre-1971 cases where the Wisconsin court had before it the same set of circumstances which we are asked to pass upon. Moreover, those cases just recently have been reviewed by the Wisconsin Supreme Court in *Nelson v. Travelers Insurance Co.*, 102 Wis.2d 159, 306 N.W.2d 71 (1981). Therein the Wisconsin court stated briefly the underlying facts, the issue before it, made its review of the four pre-1971 cases, and proceeded to dispose of every contention which the parties have laid before us on the district court ruling which we review:

"Because this is not the first time these parties have appeared before us, *see: Nelson v. Travelers Ins. Co.*, 80 Wis.2d 272, 259 N.W.2d 48 (1977), the facts giving rise to the plaintiffs' original claim, amply set forth in the above-cited opinion, need not be repeated here. For purposes of this review, it is sufficient to recite that the plaintiff and her husband brought suit against the defendants for injuries Mrs. Nelson received in an automobile accident. The action was tried to a jury which, on December 23, 1974, returned a verdict in favor of the plaintiffs, finding Mrs. Nelson 25 percent negligent and the defendants 75 percent negligent, and determining the damages to be $21,500 for Mrs. Nelson and $4,150 for her husband. After reduction of the damage amounts to reflect the jury's allocation of causal negligence and then addition of costs and disbursements, judgment was entered on the verdict on August 8, 1975.

"From this judgment Travelers appealed, and this court, finding error in the proceedings below, reversed and ordered a new trial on the liability issues only. *Nelson v. Travelers Ins. Co., supra* at 285 [259 N.W.2d 48]. Upon retrial of the liability issues to a jury, a second verdict was returned on August 24, 1979, again in favor

of the plaintiffs, but this time finding Mrs. Nelson 20 percent negligent and the defendants 80 percent negligent. In a motion after verdict the plaintiffs, on September 6, 1979, requested judgment upon both the December 23, 1974, verdict and the August 24, 1979, verdict, together with costs and interest on the net amount of damages, at the rate of 7 percent, from the date of the first verdict until the date of entry of the judgment sought in the motion. The question of the date from which interest was payable was briefed and argued, and on November 27, 1979, the trial court ruled that the plaintiffs were entitled to interest on the net amount awarded to the plaintiffs from the date of the second verdict. Judgment was entered accordingly on January 21, 1980. From this judgment the plaintiffs appealed.

"The essence of the Nelsons' claim in this case is that under sec. 814.04(4), Stats. 1977, they are entitled to interest upon the net damage award from the date of the 1974 verdict until the entry of judgment after the 1979 verdict. In support of their claim to interest dating from the earlier verdict, they cite four cases: *Zeidler v. Goelzer*, 191 Wis. 378, 211 N.W. 140 (1926); *Fehrman v. Smirl*, 25 Wis.2d 645, 131 N.W.2d 314 (1964); *Rasmussen v. Milwaukee Electric Ry. & Transport Co.*, 261 Wis. 579, 53 N.W.2d 442 (1952); and *Moldenhauer v. Faschingbauer*, 33 Wis.2d 617, 148 N.W.2d 112 (1967).

"In *Zeidler* the plaintiff was injured when the toboggan on which she was riding was struck by a car driven by the defendant Elton Goelzer, a minor. A jury found Goelzer 100 percent negligent and assessed the damages at $2,500. An appeal was taken on the issue of the defendant's father's liability under the family purpose doctrine. This court rejected the family purpose doctrine and remanded the case for a new trial on the issue of the father's liability under the theory of *respondeat superior*. *Crossett v. Goelzer*, 177 Wis. 455, 188 N.W. 627 (1922). On retrial a

second verdict was returned, again in favor of the plaintiff. A second appeal was taken, and one issue therein was the propriety under then sec. 271.05, Stats. [which is substantially similar to the current sec. 814.04(4)], of allowing interest on the damage award from the date of the first verdict. After citing the text of the applicable statute we said:

'The action is one in tort; therefore the damages are not liquidated until they are determined. No question of damages was involved upon either the second trial or on the former appeal from the judgment entered thereon. Naturally, under the decision on the former appeal, if the verdict had been favorable to the defendants, the jury's answer on the subject of damages would have been of no avail to the plaintiff. When, however, the jury assessed damages in the sum of $2,500 on the 18th day of March, 1921, such damages became liquidated, and under the language of the statute and its spirit, interest must be computed from that date. *First Wis. Trust Co. v. Schmidt*, 173 Wis. 477, 180 N.W. 832.' 191 Wis. at 389, 211 N.W. 140.

"*Fehrman, supra,* was another two-trial case. The first trial resulted in a verdict in favor of the defendant, although the jury did assess the plaintiff's damages. On appeal this court ordered a new trial on the liability issue which resulted in a second jury verdict, this time in favor of the plaintiff. A second appeal followed in which one of the issues raised was the allowance of interest on the amount of the damage award from the date of the first verdict, even though that verdict had resulted in a finding of no liability for the defendant. Once again we quoted the applicable statute and cited the *Zeidler* case, adding:

'... In the *Zeidler Case*, the verdict of the first trial was in favor of the plaintiff; nevertheless, we agree with the trial judge that this distinction is not controlling.

'The damages were liquidated after the first trial, and it was theoretically possible for a tender to have been made. *Smith v. Atco Co.* (1959), 6 Wis.2d 371, 395, 94 N.W.2d 697. We recognize that a defendant, victorious at the first trial, would scarcely contemplate a tender of damages; however, it does not follow that upon an ultimate loss of the case such defendant is protected from the burden of paying interest on the previously ascertained damages. This is especially true when, as here, no question of damages was involved upon the second trial.' 25 Wis.2d at 659, 131 N.W.2d 314.

"Both *Rasmussen* and *Moldenhauer* involved situations where a damage award established by a jury verdict was reduced as excessive. In each case this court held that, where a verdict award is reduced in post-verdict proceedings, interest is properly allowed from the date of the verdict, not the date of the reduction.

"On the basis of these cases, particularly *Zeidler* and *Fehrman*, the petitioners argued that the damages were liquidated at the time of the first verdict, and as the second trial did not involve the retrial of any damage issues, interest is payable under sec. 814.04(4), Stats.1977, from the first verdict.

"The respondents point out that in neither *Zeidler* nor *Fehrman* was there an issue as to the plaintiff's contributory negligence, so the defendant's exposure in each case was an 'all or nothing' proposition. In this case, however, it is argued that there was an issue of Mrs. Nelson's contributory negligence at the second trial, and as a result the amount the defendant might actually owe the plaintiff could not be determined until the liability verdict, with its causal negligence allocation, was reached. Because of the unresolved allocation issue, the respondents claim the damages were not liquidated until the second verdict.

"In support of this argument, the respondents rely upon *City of Franklin v. Badger Ford Truck Sales*, 58 Wis.2d 641, 207 N.W.2d 866 (1973), and *Wyandotte Chemi-*

*cals Corp. v. Royal Electric Mfg.,* 66 Wis.2d 577, 225 N.W.2d 648 (1975). In *City of Franklin* the city sued the manufacturer and seller of a fire truck for damages caused by the failure of a defective truck wheel. Although the jury was asked to allocate causal fault as between the city's operation of the truck and the defective condition of the wheel, it did not make any allocation among the three individual defendants. Because of this failure, we remanded the case for a new trial in order to make that determination, and in the concluding paragraph of our opinion we stated:

'From the above reasoning and conclusions, it necessarily follows that: ... (2) The trial court decision disallowing the plaintiff's claim to interest from the date of filing the complaint is affirmed, since the amount of damages payable by individual defendants was not fixed or determinable.' 58 Wis.2d at 657, 207 N.W.2d 866.

*Wyandotte* involved a suit for property damage against three defendants. The damage figure was stipulated on November 16, 1967, and a verdict in favor of the plaintiff, allocating causal negligence among the defendants, was returned on December 8, 1972. Judgment was entered on April 9, 1973, and amended on May 7, 1973, to reflect the denial of the plaintiff's claim to preverdict interest dating from the date of the stipulation. After an exhaustive analysis of the law relative to prejudgment interest, we concluded that under our cases, even where a damage figure was determinable, interest would not be proper 'where *some other factor* prevented the withholding party from determining the amount which should be tendered in order to avoid preverdict interest.' 66 Wis.2d at 584, 225 N.W.2d 648. In affirming the trial court's denial of the plaintiff's claim for preverdict interest, we stated:

'... While a reasonable argument is made by the plaintiffs that *Franklin* provides an inequitable rule in that it

differentiates between a case where the plaintiff sues multiple parties rather than just a single party, on the other hand, it must be recognized that the plaintiff exercises initial control over the number of parties against whom suit is brought, thus no great inequity results. Moreover, it is only by acceptance of the view that injured parties' rights to full compensation are of paramount consideration that the result argued for by the plaintiffs can be justified. However, this court has never subscribed to that belief.' 66 Wis.2d at 586–87, 225 N.W.2d 648.

"It is evident from the foregoing that the resolution of this case cannot be achieved by the simple application of the rule in any previous case. This case resembles *Goelzer* and *Fehrman* in that there are only two parties and there were two trials, at the first of which a damage figure was fixed; yet it resembles *Franklin* and *Wyandotte* in that an unresolved allocation question (albeit between plaintiff and defendant, rather than multiple defendants) prevents the precise determination of the amount the defendant must pay.

"The court of appeals, relying upon *City of Franklin, Wyandotte,* and *City of Merrill v. Wenzel Brothers, Inc.,* 88 Wis.2d 676, 277 N.W.2d 799 (1979), concluded that the unresolved question of the allocation of causal negligence between the plaintiffs and the defendants constituted 'some other factor' which prevented the determination of the amount the defendant would have to pay, and thus affirmed the judgment of the trial court. *Nelson v. Travelers Ins. Co.,* 99 Wis.2d 341, 299 N.W.2d 257 (Ct.App. 1980). We have serious misgivings about the application of the 'some other factor' rule to sec. 814.04(4), Stats.1977, particularly where, as here, the factor is not related to the formulation of the damage figure itself but is instead related to the degree of the parties' culpability.

"As early as *Laycock v. Parker,* 103 Wis. 161, 178, 79 N.W. 327 (1899), this court observed:

'The question of interest is one much more often passed upon than carefully considered by courts. It is usually presented only incidentally to much more important issues, and often decided one way or the other at the close of exhaustive investigation of the other questions, and with the perhaps unconscious feeling that it is not of sufficient magnitude to justify further serious labor. Again, the elements involved in determining the question are many of them so elastic in their application that cases may be rightly resolved in different ways without the distinction being apparent from the statement of them.'

With some exceptions, these observations could be made with equal pertinence today, and a prime example of this phenomenon is the rule in the *City of Franklin* case. That part of the decision relating to preverdict interest was summary, to say the least, and was obviously incidental to other, more significant issues in the case. Nonetheless, that one sentence in *City of Franklin* became the basis for the *Wyandotte* holding, and the Wisconsin rule preventing prejudgment interest in multiple defendant cases came to fruition. *See, e.g., In Re Air Crash Disaster Near Chicago, Illinois, on May 25, 1979,* 480 F.Supp. 1280, 1284 (N.D. Ill.1979).

"Although we are without the benefit of any extended analysis underlying the *City of Franklin* rule, its treatment in *Wyandotte* suggests that it was stated as a logical result of the application of the long-standing, basic principle that prejudgment interest cannot be awarded on an unliquidated amount or one which is not capable of determination by application of some fixed standard. In *Laycock* this court explained that initially interest was awarded to punish one who failed to pay money legally due and that the notion of interest as compensation to the creditor was not a primary consideration. Viewed from the perspective of punishment instead of compensation, the traditional liquidated-unliquidated distinction is meaningful, since it would be unreasonable to punish one for failing to pay a debt, the amount of which is not only undetermined but incapable of determination. The court in *Laycock* went on to observe that, as commerce and matters of credit become more widespread, interest as an aspect of compensation for the use of another's money grew as a matter of 'commercial equity,' 103 Wis. at 179, 79 N.W. 327, leading the court to summarize:

'As would be expected, courts have varied greatly in applying these rules to individual cases; but it may be safely said that the tendency has been in favor of allowing interest rather than against it, and that the degree of certainty or ease with which the approximate amount can be ascertained has grown less and less stringent.' 103 Wis. at 182–83, 79 N.W. 327.

"In *Wyandotte* we again commented on the development of interest as compensation under the time-value theory of money, concluding that while the idea that interest is awardable as a part of compensatory damages has been reflected in case subsequent to *Laycock*, some vestiges of the old notion remain to protect the withholding party from liability for interest on sums which, because of their undeterminable character, cannot be tendered in payment. The result, we concluded, was the development of a compromise or 'middle ground' where interest was recoverable in some cases where the amount due, while not truly liquidated, was capable of determination but not recoverable where something prevented the computation of the exact amount due. *Compare: Necedah Mfg. Corp. v. Juneau County,* 206 Wis. 316, 237 N.W. 277, 240 N.W. 405 (1932); *Maslow Cooperage Corp. v. Weeks Pickle Co.,* 270 Wis. 179, 70 N.W.2d 577 (1955); *Giffen v. Tigerton Lumber Co.,* 26 Wis.2d 327, 132 N.W.2d 572 (1965); *DeToro v. DI–LA–CH, Inc.,* 31 Wis.2d 29, 142 N.W.2d 192 (1966), *with Smith v. Atco Co.,* 6 Wis.2d 371, 94 N.W.2d 697 (1959); *Congress Bar & Res-*

*taurant v. Transamerica Ins. Co.*, 42 Wis.2d 56, 165 N.W.2d 409 (1969); *Luber v. Milwaukee County*, 47 Wis.2d 271, 177 N.W.2d 380 (1970); *Stevens Construction Corp. v. Carolina Corp.*, 63 Wis.2d 342, 217 N.W.2d 291 (1974); *State ex rel. Schilling & Klingler v. Baird*, 65 Wis.2d 394, 222 N.W.2d 666 (1974). Both *City of Franklin* and *Wyandotte* could probably be characterized as middleground decisions in that both cases involved stipulated damages, but interest prior to the second verdict was precluded in each because questions of apportionment of liability prevented an exact calculation of the amount payable by each defendant.

"We are no longer firmly convinced that only the unliquidated or unliquidable character of damages should determine whether interest is payable on the amount due. It is true that the kinds of damages associated with personal injury suits epitomize the concept of unliquidated damages, but the person injured is no less entitled to compensation because his injuries are initially in the nonpecuniary realm of pain and suffering, emotional distress, loss of society, or the loss of use of a limb or limbs, to name a few such categories. Moreover, to the extent that those injuries are ultimately compensable, the wrongdoer who must make compensation has the use of the money until payment is made (and he has such use whether he is aware of the amount due or not). Conversely, the plaintiff, who *should* have the money, does not have it and thus cannot put it to use only because, through no fault of his own, the human body is not susceptible to some sort of replacement cost or market value analysis at the time of injury, and a damage figure must, generally, await jury determination. *See, e.g., Carlton v. H.C. Price Co.*, 640 F.2d 573, 576 (5th Cir.1981) (under Alaska law) ('the purpose of prejudgment interest is to put a plaintiff in the position he would have been in had he had his trial and recovered his judgment immediately after his injury'). The interest obligation imposed upon the wrongdoer is not an additional penalty for the wrong but is simply the value of the use of the money—a value which should be accruing for the benefit of the plaintiff-creditor but, because of the nature of the debt, was accruing to the defendant-debtor instead.

"In this case we need not pursue this line of reasoning to its logical conclusion since we are dealing with postverdict interest only, and we can look to the language of sec. 814.04(4), Stats.1977, for guidance. That section provides that interest at the stated rate shall be payable from the date of the verdict until the date judgment is entered. As we indicated in *Goelzer* and *Fehrman*, the existence of multiple verdicts does not render the statute inapplicable, provided the final judgment rests in part upon both verdicts. We do not think the unresolved matter of the allocation of causal negligence between the plaintiff and the defendant, with its consequent effect on the apportionment of damages, should alter the application of sec. 814.04.

"The statute designates the date of the verdict as the point at which interest is payable. In a personal injury case, the verdict which assesses the plaintiff's damages is significant because it converts nonmonetary concepts of personal injury into dollars. We believe it is that conversion which, under this statute, triggers the plaintiff's right to interest payments because once this figure is reached the parameters of the 'debt' have been established and the case no longer involves 'damages which are wholly at large.' 1 Sutherland, *Law of Damages*, sec. 347, 1092 (4th ed. 1916).

"Although both *City of Franklin* and *Wyandotte* are distinguishable from the instant case because they concern claims for preverdict interest, the fact that each involved stipulated damages diminishes the significance of that distinction. Rather, we believe the rationale of those cases is suspect for different reasons. A dispute as to a defendant's liability has never been recognized as a bar to the payment of interest.

*Laycock,* 103 Wis. at 186, 79 N.W.2d 327, ('[m]ere difference of opinion as to amount is, however, no more a reason to excuse him from interest than difference of opinion whether he legally ought to pay at all, which has never been held an excuse'); *Fehrman v. Smirl, supra; Wyandotte Chemical Corp. v. Royal Electric Mfg., supra; City of Merrill v. Wenzel Brothers, Inc., supra,* ('interest runs from the date the damages are liquidated or determinable regardless of the existence of legal issues regarding liability for those damages'), 88 Wis.2d at 698, 277 N.W.2d 799. The allocation of causal fault with its corresponding mathematical impact upon the dollar amount ultimately due a plaintiff is far more a question of liability than of damages, since it is related only to determining degrees of culpability and not to quantifying the value of a person's actual injuries. *See, e.g., DeToro v. DI–LA–CH, Inc.,* 31 Wis.2d at 34, 142 N.W.2d 192. It follows that the application of our contributory negligence statute should not operate to the plaintiff's disadvantage in a situation where, as in this case, the damages are fixed by a prior verdict, but the adjustment for relative fault must await the determination of the liability issues in a subsequent trial. We hold that the resulting 'uncertainty' in the computation of the amount is not sufficient to overcome the plaintiffs' statutory right to interest under sec. 814.-04(4), Stats.1977, from the date of the first verdict. Accordingly, the plaintiffs are entitled to interest on the net damage award (the total damages established in the first verdict reduced by the plaintiffs' contributory negligence established in the second verdict) from the date of the first verdict." *Nelson, supra,* 306 N.W.2d at 72–77 (footnotes omitted).

In the case which we review, we now have before us the two verdicts which are wholly conclusive and dispositive of the issues which were pleaded and tried. In our 1983 opinion we specifically affirmed and let stand the 1978 jury verdict fixing the total amount of damages sustained by the plaintiffs. In accord with *Nelson, supra,* the significance of a verdict in a personal injury action which assesses the plaintiff's damages is that "it converts nonmonetary concepts of personal injury into dollars,"—a conversion which "triggers the plaintiff's right to interest *because once this figure is reached the parameters of the 'debt' have been established* and the case no longer involves 'damages which are wholly at large.'" *Nelson, supra,* 306 N.W.2d at 77 (emphasis added). In *Nelson* there had been a second final verdict rendered on the retrial of the liability issue, and the Wisconsin Court affirmed the district court, which entered a judgment for plaintiffs including interest "on the net damage award (the total damages established in the first verdict reduced by the plaintiff's contributory negligence established in the second verdict) from the date of the first verdict." *Id.* Such is the law in Wisconsin, the state from which our legislature adopted our Idaho enactment of comparative negligence.

The main thrust of the defendants' argument to us is that until proportionate culpability would be determined at the second trial it would be impossible for them, with any degree of certainty, to make any tender of payment on damages—either to the plaintiffs or into the court registry, in order to stop the accrual of interest. However, as the Wisconsin Supreme Court has pointed out, "The damages were liquidated at the first trial, and it was theoretically possible for a tender to have been made. . . . This is especially true when, as here, no question of damages was involved upon the second trial." *Id.* at 73 (quoting from *Zeidler v. Goelzer,* 191 Wis. 378, 211 N.W. 140 (1926).

Our case presents a set of circumstances more suggestive of the advisability of a tender than any of the Wisconsin cases. Here the jury at the first trial allocated but ten percent of causal negligence to the plaintiffs, 90 percent being allocated to all defendants—of which the State of Idaho's

causal negligence was assessed at but 25 percent. On the first appeal, defendants Johnson and Carnline were unable to persuade the Court of any error whatsoever. The state, however, was successful in many areas—important areas—and it would seem not too speculative to have anticipated that at the second trial, with much evidence adverse to the state being excluded which had been previously admitted, the state might very well succeed in obtaining a verdict which assessed against it no causal negligence, or at least a reduced percentage of causal negligence. It was also to be kept in mind that if the second jury assessed plaintiffs' percentage in line with the first jury's determination, the defendants Carnline and Johnson, at a trial which as to them was error-free, had good reason to anticipate the possibility that the verdict at the second trial might assess them anywhere between 65 percent and perhaps 90 or 100 percent of causal negligence. Those defendants had the benefit of having seen at first hand the evidence which had been adduced against them at the first trial, and the slight evidence of negligence which all defendants had been able to present against the plaintiffs.

■ While we could be content to merely follow the *ratio decidendi* of the Wisconsin court, we think it not inappropriate to point out that there were some factors which Johnson and Carnline could have considered had they seriously desired to make a tender of some amount. Even before this Court in 1983 affirmed the damages and reversed and remanded for a new trial on liability only, the defendants had available to them this Court's 1980 holding in *Odenwalt, supra,* which gave ample forewarning that pre-1971 Wisconsin case law would be applied in Idaho in comparative negligence cases. In fairness, we note that counsel who appeared on this appeal on behalf of the defendants were not counsel who were advising defendants after our first opinion and were not counsel at the second trial. However, in fairness to prior counsel, we also observe that present counsel for the defendants have apparently been unaware of *Nelson, supra.* All that we can say affirmatively is that neither that case nor *Odenwalt* were brought to our attention in the defendant's briefs.

We also believe that those few Idaho cases which have dealt with or touched upon the issue of prejudgment interest have given some indication of this Court's trend in the same direction as the Wisconsin court. For example, in *Mitchell v. Flandro,* 95 Idaho 228, 506 P.2d 455 (1973), in an action premised on a breach of contract, the Court used language much like that found in Wisconsin's *Nelson* opinion:

"[I]t is ... settled that 'courts have refused to allow interest from a time prior to judgment when the principal amount of liability was unliquidated. This limitation is apparently based on equitable considerations. However, when the amount of liability is liquidated or capable of ascertainment by mere mathematical processes ... this Court has allowed interest from a time prior to judgment, for in that event the interest in fully compensating the injured party predominates over other equitable considerations.' " *Farm Development Corp. v. Hernandez,* 93 Idaho 918, 478 P.2d 298 (1970) (quoting *U.S. Fidelity and Guaranty Co. v. Clover Creek Cattle Co.,* 92 Idaho 889, 900, 452 P.2d 993 (1969).

*Accord, e.g., Guyman v. Anderson,* 75 Idaho 294, 271 P.2d 1020 (1954) ("interest will be allowed even though the claim is unliquidated 'where the amount due can be readily ascertained by mere computation, or by a legal or recognized standard.' "). *Mitchell, supra,* 95 Idaho at 234–35, 506 P.2d at 461–62.

There is a similarity to be noted in comparing the language of the very early case of *Laycock v. Parker,* 103 Wis. 161, 79 N.W. 327 (1889), quoted in *Nelson,* with *U.S. Fidelity and Guaranty Co. v. Clover*

908

*Creek Cattle Co.*, 92 Idaho 889, 452 P.2d 993 (1969), quoted in *Mitchell.* In *Clover Creek*, this Court stated: "When the amount of liability is liquidated ... this Court has allowed interest from a time prior to judgment, for in that event the interest in fully compensating the injured party predominates over other equitable considerations." *Clover Creek, supra*, 92 Idaho at 90, 452 P.2d at 1004. The Wisconsin Supreme Court in *Laycock*, as paraphrased by the *Nelson* Court, stated: "as commerce and matters of credit become more widespread, interest as an aspect of compensation for the use of another's money grew as a matter of commercial equity." *Nelson, supra*, 306 N.W.2d at 75. The *Nelson* court then quoted directly from *Laycock:*

> "As would be expected, courts have varied greatly in applying these rules to individual cases; but it may be safely said that the tendency has been in favor of allowing interest rather than against it, and that the degree of certainty or ease with which the approximate amount can be ascertained has grown less and less stringent." 103 Wis. at 182–83, 79 N.W. 327. *Id.*

This common sense rule arises out of well-established precepts of the law of damages. In principle, as Professor McCormick explained, interest is "allowed by law as additional damages for loss of use of the money due as damages, during the lapse of time *since the accrual of the claim.*" C. McCormick, *Handbook on the Law of Damages* § 50 p. 205 (1935) (emphasis added). Ideally, then, an injured party begins to accrue interest from the time the injury occurred. Subsequent decisions of trial and appellate courts, if favorable to the injured party, serve only to confirm that the injured party was deserving of this interest all along.

Today we go this far, and no further. In accord with existing Idaho case law which has touched upon the subject, and in accord with Wisconsin comparative negligence case law which preexisted this state's adop-tion by enactment of the same scheme, and which had been construed by the highest court of that state, under the situation here, which is exactly that which has already judicially been passed upon in Wisconsin, we hold that the district court did not err in awarding interest in the same manner as it would have been awarded in Wisconsin.

Affirmed. Costs to respondents; no attorney's fees.

DONALDSON, C.J., and HUNTLEY, J., concur.

SHEPARD, J., dissents without opinion.

BAKES, Justice, concurring specially:

I concur in the result reached by the majority. This case involves the two-trial situation where a first judgment rendered in favor of the plaintiff is reversed only in part, the fact and the dollar amount of plaintiff's injuries being specifically affirmed. As in this case, where the percent of recovery by the plaintiff in the second trial is established to be at least as high as, or higher than in the first trial, the court was correct in allowing interest on the award in the second judgment, back to the date of the first judgment. I also agree with the majority that "[t]oday we go this far, and no further." Except for this narrow exception carved out by today's case, the rule is, and continues to be, that prejudgment interest is not awarded in tort cases. With that understanding, I concur in the result of today's opinion.

## ON REHEARING

BISTLINE, J.

The major thrust of the defendants at rehearing was that the court inappropriately applied the rule of *Odenwalt v. Zaring*, 102 Idaho 1, 624 P.2d 383 (1980)—wherein it was held that there was a presumption that the Idaho legislature, in adopting Wisconsin's comparative negligence statute,

also adopted that state's prior existing judicial construction of the statute as well. The contention made was that *Nelson v. Travelers Insurance Co.*, 102 Wis.2d 157, 306 N.W.2d 71 (1981) involved only Wisconsin's statute providing interest on a verdict, and had no concern whatever with concepts of comparative negligence. That statute provided:

> **(4) Interest on verdict.** When the judgment is for the recovery of money, interest at the rate of 7% per annum from the time of verdict, decision or report until judgment is entered shall be computed by the clerk and added to the costs.

Wisc.Stat.Ann. § 814.04(4) (1977).

That this provision was mentioned in *Nelson* fails to alter the fact that *Nelson*, like the instant case, *was* a comparative negligence case that *did* involve post-judgment as well as post-verdict interest. The defendant apparently forgets that at the first hearing its primary assertion was that the damages for which the two defendants then involved were liable could not be ascertained until causative fault of the two defendants and the plaintiff had been apportioned under *the comparative negligence statute.* By virtue of *Odenwalt*, we presumed that the Idaho legislature, consistent with pre-1971 Wisconsin case law as summarized in *Nelson, supra,* intended that interest would run on damages which were established (with this Court's stamp of finality) by a jury verdict upon which a judgment was immediately entered, notwithstanding a reversal as to the State's liability with direction on remand for retrial of only issues of comparative fault of *all* parties.

The post-verdict provision of Wisconsin Law, § 814.04(4) (1977), is primarily of academic interest only. Under Idaho practice there is, and has been, no need for any comparable statute or rule. When verdict has been rendered and accepted, judgment is entered thereon and interest begins accruing thereon immediately. This is not so in Wisconsin, as is readily apparent from the *Nelson* excerpts set out at length in

our January opinion. From 111 Idaho page 901, 728 P.2d page 1310 of that opinion, quoting directly from *Nelson*:

> The action was tried to a *jury which, on December 23, 1974, returned a verdict* in favor of the plaintiffs, finding Mrs. Nelson 25 percent negligent and the defendants 75 percent negligent, and determining the damages to be $21,500 for Mrs. Nelson and $4,150 for her husband. After reduction of the damage amount to reflect the jury's allocation of causal negligence and then addition of costs and disbursements, *judgment was entered on the verdict on August 8, 1975.* (Footnote omitted; emphasis added.)

Again from page 901, 728 P.2d page 1310 of that opinion; again quoting directly from *Nelson*:

> Upon retrial of the liability issues to a jury, *a second verdict was returned on August 24, 1979,* again in favor of the plaintiffs, but this time finding Mrs. Nelson 20 percent negligent and the defendants 80 percent negligent. In a motion after verdict the plaintiffs, on September 6, 1979, requested judgment upon both the December 23, 1974, verdict and the August 24, 1979, verdict, together with costs and interest on the net amount of damages, at the rate of 7 percent, from the date of the first verdict until the date of entry of the judgment sought in the motion. The question of the date from which interest was payable was briefed and argued, and on November 27, 1979, the trial court ruled that the plaintiffs were entitled to interest on the net amount awarded to the plaintiffs from the date of the second verdict. *Judgment was entered accordingly on January 21, 1980.* From this judgment the plaintiffs appealed. (Emphasis added.)

Following the first trial seven-and-one-half months intervened from verdict to judgment. Following the second trial on liability only, almost five months intervened. Under the provisions of Wisc.Stat.Ann. § 806.06 (1977), which provide thirty days

for the rendering and entry of judgment on the verdict, it is within the province of the court to stay the entry of judgment even beyond the thirty days, where, as in *Nelson I* (*Nelson v. Travelers Ins. Co.*, 80 Wis.2d 272, 259 N.W.2d 48 (1977)) post-verdict motions are filed such as for a non-suit and a directed verdict, at pp. 50, 51. Suffice it to say, then, that the distinction between post-verdict interest (Wisconsin) and post-judgment interest (Idaho) is a distinction without a difference. Moreover, we are unable to see that the Wisconsin court's mention of post-verdict interest was a necessary or integral part of its determination to award interest on damages which had been finally and conclusively liquidated, converting non-monetary concepts of personal injury into dollars, thus triggering the plaintiffs' right to interest—because once this figure is reached the parameters of the debt have been established, and the case no longer involved damages which are wholly at large.

The essential fact in *Nelson* and here was that after the adjudication of damages at the first trial, they were readily ascertainable. The *Nelson* Court's explanation of the effect of an adjudication of damages applies equally well if not better to an adjudication in the form of a final judgment as it does to a verdict:

> In a personal injury case, the verdict which assesses the plaintiff's damages is significant because it converts nonmonetary concepts of personal injury into dollars. We believe it is that conversion which, under this statute, triggers the plaintiff's right to interest payments be-

cause once this figure is reached the parameters of the "debt" have been established and the case no longer involves "damages which are wholly at large." 1 Sutherland, *Law of Damages*, sec. 347, 1092 (4th ed. 1916). Quoted in first opinion, p. 905, 728 P.2d p. 1314.

Finally, and of most importance, the *Nelson* Court explained why a redetermination of the comparative fault of all parties at a second trial is no bar to interest accruing on damages adjudicated at the first trial. From pages 905–06, 728 P.2d pages 1314–15 of our first opinion, where we quoted directly from *Nelson*:

> A dispute as to a defendant's liability has never been recognized as a bar to the payment of interest.... *The allocation of causal fault with its corresponding mathematical impact upon the dollar amount ultimately due a plaintiff is far more a question of liability than of damages, since it is related only to determining degrees of culpability and not to quantifying the value of a person's actual injuries....* It follows that the application of our contributory negligence statute should not operate to the plaintiff's disadvantage in a situation where, as in this case, the damages are fixed by a prior verdict, but the adjustment for relative fault must await the determination of the liability issues in a subsequent trial. (Emphasis added.) [1]

The mere fact the *Nelson* spoke of post-verdict interest does nothing to make the

---

1. The dissent overlooks this unambiguous discussion of the interplay between Wisconsin's contributory negligence statute and the propriety of interest on damages. The central issue in *Nelson*, which the dissent fails to understand, is whether a second trial to redetermine the *comparative negligence* of the parties obviates the defendant's obligation to pay interest on the previously adjudicated damages which were affirmed on appeal. As the above quote shows, the dissent's claim that *Nelson* did not involve Wisconsin's comparative negligence statute is false.

Just as false is the dissent's assertion that we today hold the Idaho legislature to have adopted

Wisconsin's prejudgment interest statute. Quite to the contrary, as earlier explained, we find that statute to have *no significance* in the instant case. Our analysis focuses only on the effect of a second adjudication of liability after a first and affirmed adjudication of damages. This, after all, was the issue presented on appeal. The unalterable fact remains that *Nelson*, in applying pre–1971 Wisconsin case law, held that "the application of our contributory negligence statute should not operate to the plaintiff's disadvantage in a situation where, as in this case, the damages are fixed by a prior verdict, but the adjustment for relative fault must await the determination of the liability issues in a subse-

Wisconsin courts rationale inapplicable in this case where the monetary adjudication of damages was specifically affirmed in *Leliefeld I.*

At the first trial appealed from in *Leliefeld I,* the jury by its verdict, made two determinations. It allocated the causal negligence of the parties—"Leliefeld (10%), Carnline (65%) and the State (25%). The jury found damages as follows: Donald L. Leliefeld ($400,000), Jewel H. Leliefeld ($20,000), and Nabisco ($13,946.62)." *Leliefeld I,* 104 Idaho at 361–62, 659 P.2d at 115–16.

The court's opinion in *Leliefeld I* provides the court's judgment: "Because we find no reversible error with respect to the determination of damages ... we *affirm that determination.*[2] (citing cases).... We affirm in part and reverse in part and remand for further proceedings in accordance with this opinion." *Leliefeld I,* 104 Idaho at 375, 659 P.2d at 129 (emphasis added). That judgment became the judgment of this court affirming the lower court's judgment on the verdict as to damages caused to Mr. and Mrs. Leliefeld and to Nabisco.[3]

In the *Nelson* case, the Wisconsin court could have referred the accruing of interest

to the time of entry of the judgment on the verdict—which was on August 5, 1975—but apparently chose not to do so because of the seven-and-one-half month delay in disposing of post-verdict motions. The post-verdict statute was available; that court chose to utilize it. But it is inescapable that the rationale of its decision would have been equally applicable had judgment on the verdict been entered immediately as it is in Idaho—in which event it would have referred to it post-judgment interest statute. Wisc.Stat.Ann. § 815.05(8).

For the foregoing reasons, we continue to adhere to our previous opinion, dated January 16, 1986.

DONALDSON, C.J. and HUNTLEY, J., concur.

BAKES, Justice, dissenting:

In their petition for rehearing, appellants have correctly pointed out the error in this Court's initial opinion in this appeal. Following this Court's disposition of the first appeal in *Leliefeld v. Johnson,* 104 Idaho 357, 659 P.2d 111 (1983) (*Leliefeld I*), in which we reversed the trial court's finding of liability and remanded for a new trial on that issue, there existed no judgment upon

---

quent trial." We agree with the Wisconsin court's determination of the import of its earlier case law.

Perhaps more importantly, we also agree with and adopt the *Nelson* court's sound reasoning. *See* January opinion, pp. 907–08, 728 P.2d at pp. 1316–17. That reasoning is firmly rooted in the law of damages as established by McCormick and by this Court in *Mitchell, Guyman, Farm Development,* and *Clover Creek. Id.* As a consequence of our adopting the reasoning of *Nelson,* the dissent's hypertechnical arguments against its precedential value are irrelevant as well as erroneous.

**2.** The word determination in the context used, "affirmed" carries the connotation of a court's decision. "It implies an ending or finality of a controversy or suit." Synonymous words are "Decision; Decree; Finding; Judgment; Opinion." Black's Law Dictionary (rev. 5th ed. 1979).

**3.** It is the dissent which resorts to a "play on words," by defining "judgment" as excluding a determination as to damages and propounding

*ipse dixit* that when there is no "judgment," as the dissent chooses to define it, there can be no interest. The dissent's definition is in contrast with the definition to be found in Black's Law Dictionary, quoted *supra,* n. 2. The dissent also ignores the fact that in *Leliefeld I* this Court recounted the first judgment of liability and damages, 104 Idaho at 362, 659 P.2d at 116, and then reversed the judgment in part and affirmed in part, the latter including the *adjudication* of damages. *Id.* at 375, 659 P.2d at 129.

In the process of this semantic game, the dissent demonstrates a total misunderstanding of what constitutes "liquidated damages" or a "readily ascertainable" amount of damages. As this Court has long recognized, a mere dispute over liability means *nothing* as to whether damages are sufficiently certain or warrant the accumulation of interest. *Mitchell, supra,* 95 Idaho at 234–35, 506 P.2d at 461–62 (quoting *Clover Creek* and *Farm Development Corp.,* and citing *Guyman*); *accord, Nelson, supra,* 306 N.W.2d at 77. Once those damages are readily ascertained, as they unquestionably were here, then interest accrues, although ultimately subject to a finding of liability on the part of the defendant.

which our post-judgment interest statute, I.C. § 28–22–104(2), could operate. Thus, any attempt to award interest to respondents based upon the first judgment which we reversed in *Leliefeld I* runs directly contrary to the longstanding rule in this state that prejudgment interest is not allowed in tort cases. Furthermore, in adopting the comparative negligence statute from Wisconsin, the Idaho legislature did not in the same action adopt the remainder of the Wisconsin code. The majority's strained interpretation of *Odenwalt v. Zaring*, 102 Idaho 1, 624 P.2d 383 (1980), and of *Nelson v. Travelers Ins. Co.*, 102 Wis.2d 159, 306 N.W.2d 71 (1981), as requiring such a result is clearly erroneous. Therefore, I dissent.

### I

In the recent case of *Davis v. Professional Business Services, Inc.*, 109 Idaho 810, 712 P.2d 511 (1985), we expressly stated that "this Court has [not] in the past awarded prejudgment interest in a tort case outside of the area of conversion." *Id.* at 815, 712 P.2d at 516. In an apparent attempt to avoid the rule as stated by the Court in *Davis*, the majority in the present case argues that its holding does not violate the general rule regarding prejudgment interest. The majority argues that the prejudgment rule is inapplicable because the interest awarded in this case is based on the trial court's "judgment" regarding damages. However, that is merely a play on words. There was no separate "judgment" on damages involved in the *Leliefeld I* appeal. The appeal in *Leliefeld I* was from a single judgment entered on the jury's determination of both liability and damages. While we affirmed *the jury's determination* of damages, we

nevertheless reversed *the trial court's judgment* and remanded for a new trial on the liability issue. After *Leliefeld I*, there was no "judgment" upon which our post-judgment interest statute, I.C. § 28–22–104 (2) (or any other post-judgment proceedings, such as execution, etc.), could operate. In *Leliefeld I*, we merely indicated that the total amount of damages determined *by the jury* need not be retried upon remand.

> "The quantum of damages awarded *by the jury* is adequately supported by the record. Because we find no reversible error with respect to the determination of damages and we consider the damages severable from the liability issue, we affirm that determination." *Leliefeld v. Johnson*, 104 Idaho at 375, 659 P.2d at 129.

Though upholding *the jury's determination* of damages, we nevertheless reversed the judgment and remanded the cause to the trial court for a new trial to determine the liability of the various parties.

Having reversed the judgment, there remained no basis for a separate judgment on the damages. Without a final determination or judgment regarding liability, there could be no final judgment regarding the amount of damages assessed to the individual parties to the lawsuit. The majority itself states that any "judgment" as to damages is "ultimately subject to a finding of liability...." *Ante* at 911, n. 3, 728 P.2d at 1320, n. 3. Thus, there was no "liquidated" or "readily ascertainable" amount of damages assessed against any one party to the lawsuit.[1] It would have been impossible for appellants to have tendered the correct payment on such an unknown amount of damages.[2] Again, the

---

1. The majority relies on the cases of *Mitchell v. Flandro*, 95 Idaho 228, 506 P.2d 455 (1973); *Farm Development Corp. v. Hernandez*, 93 Idaho 918, 478 P.2d 298 (1970); *U.S. Fidelity & Guaranty Co. v. Clover Creek Cattle Co.*, 92 Idaho 889, 452 P.2d 993 (1969); and *Guyman v. Anderson*, 75 Idaho 294, 271 P.2d 1020 (1954), for support of its "liquidated" and "readily ascertainable" damages rationale. However, every one of these cases was a contract case wherein pre-

judgment interest on damages was governed by specific contract provisions relating to interest or by specific statutory provisions found in the Idaho Code, in particular I.C. § 28–22–104(1). The pre-judgment interest rule in these cases was not based upon any *common law* interest rule. Thus, such cases are wholly inapposite to the case at hand, a tort case.

2. The majority asserts that appellants should have known that they would ultimately be held

rule in this state as we held in *Davis v. Professional Business Services, Inc., supra,* is that interest on damages in a tort case is only allowed from the date judgment is entered until the date such damages are paid. The judgment entered on September 6, 1978, and appealed to this Court in *Leliefeld I,* was reversed, and thus it is as if that judgment never existed. The only date from which interest should be permitted to run is October 19, 1983, the date judgment was entered following retrial after our remand in *Leliefeld I.*

## II

In *Odenwalt v. Zaring,* 102 Idaho 1, 624 P.2d 383 (1980), we held that in adopting the Wisconsin statutory scheme for comparative negligence, the Idaho legislature was also deemed to have adopted any prior judicial construction of the Wisconsin statute.

> "A statute which is adopted from another jurisdiction will be presumed to be adopted with the *prior construction* placed upon *it* by the courts of such other jurisdiction.
>
> . . . .
>
> "We should follow the interpretation which the Wisconsin Supreme Court [has] placed upon *their comparative negligence statute* prior to 1971."

Thus, the only Wisconsin cases which are controlling are those which construe or interpret Wisconsin's *comparative negligence statute* prior to 1971. The majority now purports to take that holding one giant step further by holding that the legislature also intended to adopt Wisconsin's prejudgment interest statute, a statute without counterpart in Idaho and unrelated in any way to Wisconsin's comparative negligence statutes. The majority's rationale for its holding is that Wisconsin, as part of its comparative negligence scheme, permits the award of prejudgment interest.

liable for more than the amount of damages determined after the first trial and judgment entered on September 6, 1978. If the appellants had the foresight, which the majority asserts, in hindsight, that they should have had, and the

The basis for the majority's assertion is its own interpretation of the Wisconsin Supreme Court case of *Nelson v. Travelers Ins. Co.,* 102 Wis.2d 159, 306 N.W.2d 71 (1981). However, *Nelson* was *not,* as asserted by the majority, a comparative negligence case; it did not at any point attempt to construe Wisconsin's comparative negligence statute. *Nelson* dealt *solely* with the application of Wisconsin's prejudgment interest statute, Wis.Stat. § 814.04(4) (1977), to the *operative* facts of *Nelson.* The operative facts of *Nelson* are those concerning the entry of judgments after two separate trials, and not the fact that the underlying case in *Nelson* involved application of the comparative negligence statute. The Wisconsin court made it very clear at the outset of its opinion (with language omitted by the majority in its extensive quotation of *Nelson*) that *Nelson* dealt solely with the application of its specific pre-judgment interest statute to the operative facts of the case.

> "The *sole issue* before this court is whether *under sec. 814.04(4),* Stats.1977, when a personal injury action results in a jury verdict in favor of the plaintiff, but upon appeal the liability portion of the verdict is set aside and those issues, including a question of the plaintiff's contributory negligence, are retried, again resulting in a verdict for the plaintiff, interest on the damage award should be paid from the date of the first verdict (when damages were determined) or the second (when the liability was determined).
>
> . . . .
>
> "In this case, we need not pursue this line of reasoning to its logical conclusion since we are dealing with post-verdict interest only, and *we can look to the language of sec. 814.04(4),* Stats.1977, for guidance." *Nelson,* 306 N.W.2d at 72, 76 (emphasis added).

appellants had paid a greater amount of damages than that ultimately awarded, one wonders if the majority would also hold that appellants would be entitled to interest from plaintiffs on any overpaid amount?

The *Nelson* court at the conclusion of its opinion adequately expressed its holding in the following language:

"We hold that the resulting 'uncertainty' [following remand after appeal from a first trial regarding both damages and liability] in the computation of the amount is not sufficient to overcome the plaintiff's *statutory right to interest under Sec. 814.04(4)*, Stats.1977, from the date of the first verdict." *Nelson*, 306 N.W.2d at 77. (Emphasis added.)

Clearly, the plaintiff's right to pre-judgment interest in the *Nelson* case was based on their *express* "statutory right" under the pre-judgment interest statute and not based upon any *implied* right to such interest under Wisconsin's comparative negligence statute. The *Nelson* court never once attempted to interpret or construe the Wisconsin comparative negligence statute.[3] It was mere coincidence that the underlying case was a comparative negligence case. That the underlying case was a comparative negligence case is of no relevance whatsoever to the holding in *Nelson*. It might just as well have been a property or contracts case, or even a non-negligence tort case. To argue, as does the majority, that simply because the underlying case in *Nelson* was a comparative negligence case, the statutory provision for prejudgment interest has wondrously become part and parcel of Wisconsin's comparative negligence law and thereby adopted by the Idaho legislature when it drafted our comparative negligence statute requires a quantum leap in logic.

The Wisconsin prejudgment interest statute is entirely independent and separate from Wisconsin's comparative negligence statute. The prejudgment interest provision is part and parcel of Wisconsin's civil procedure code. Indeed, Section 814.04 is part of chapter 814 of the civil procedure code entitled "Costs and Fees in Courts of Record." Section 814.04 itself is entitled "Items of Cost." Thus, it would appear that Section 814.04 is analogous to Rule 54(d)(1) of the Idaho Rules of Civil Procedure. However, Rule 54(d)(1) has no counterpart to subsection (4) of Section 814.04, *i.e.*, Wisconsin's prejudgment interest rule.

Furthermore, the current version of Section 814.04 construed by the Wisconsin Supreme Court in *Nelson* was enacted in 1973 and modified by order of the Wisconsin Supreme Court in 1975. Thus, the current version of Section 814.04 was not in existence in 1971 when our own legislature enacted Idaho's comparative negligence statute. *Nelson* is a 1981 case interpreting a 1975 version of Section 814.04. Clearly, under the holding of *Odenwalt*, such a case or statute is not relevant with regard to the intent of the Idaho legislature in adopting Wisconsin's statutory scheme of comparative negligence.

Under *Odenwalt*, the only case law which would be controlling would be pre-1971 case law. The majority opinion does not even discuss pre-1971 Wisconsin case law. The majority relies solely on *Nelson's* (a *post*-1971 case—actually 1981) "interpretation of pre-1971 Wisconsin case law." While *Nelson* does discuss some pre-1971 cases, each of those cases involved interpretation of Wisconsin ,unique pre-judgment interest statute (some involved the predecessor to current Section 814.04(4)) and not the comparative negligence statute.[4] Thus, the *Nelson* decision does not represent the comparative negligence law of Wisconsin prior to 1971, the time the Idaho legislature passed our comparative negligence statute. Rather, it represents a *post-1971 statement of law* in Wisconsin regarding pre-judgment interest, based on

---

3. The comparative negligence statute is mentioned only once in the entire *Nelson* opinion, both majority and dissenting. It is mentioned only in passing and is of no relevance whatsoever to the court's interpretation of Sec. 814.04(4), Wisconsin's pre-judgment interest statute.

4. Furthermore, the *Nelson* court expressly stated that its holding was not based upon such prior case law. It found the prior cases to be non-dispositive of the issue before it. "It is evident from the foregoing [discussion of prior case law] that the resolution of this case cannot be achieved by the simple application of the rule in *any* previous case." *Nelson*, 306 N.W.2d at 74.

a pre-judgment interest statute which Idaho never had in 1971, and still doesn't.

The majority's assertion that the Wisconsin prejudgment interest provision was intended by the Idaho legislature to be included as part of Idaho's comparative negligence scheme raises the question of what other Wisconsin statutes may ultimately be incorporated into Idaho law on the claim that they are comparative negligence law baggage.

SHEPARD, J., concurs.